# S. C. UFFORD v. J. T. WELLS ET AL.

1. PLEADING.—The plaintiffs, in trespass to try title, in their petition claimed title in themselves as heirs of the original grantee of the land and of his wife, by general allegation to that effect. The petition was excepted to on the ground (1) that it did not state whether the grantee died testate or intestate ; (2) nor what estate the plaintiffs claimed in the land sued for; (3) nor whether the grantee was ever married : *Held,* That since the petition stated a *prima-facie* case in favor of plaintiffs, its alleged defects were more properly matters of defense than of necessary affirmative allegation in the petition.

2. SUBSEQUENT PURCHASER — PARTIES.—Though a subsequent purchaser is a proper party in all suits to enforce a prior lien, yet he may not be a necessary party except to bar his equity of redemption.

3. FORECLOSURE—SUBSEQUENT PURCHASER—EQUITY OF REDEMPTION.—If the superior title remains in the plaintiff in a suit to foreclose, and the title of the subsequent purchaser is subordinate thereto, the mere fact that he was not made a party to the enforcement of the lien for the purchase-money, against the original vendees, although it might operate to prevent any prejudice to his right to the equity of redemption, yet could not prejudice the superior title of the plaintiff. If plaintiff's title was superior before the judgment of foreclosure and the sale thereunder to himself, this would not make it less so.

4. SUBSEQUENT PURCHASER — NECESSARY PARTIES. — The cases in which a subsequent purchaser or incumbrancer, if known, has been held to be a necessary party to a suit to foreclose a prior lien in order to affect his title, are those in which he held under the superior legal title, subject only to a claim for a lien to be enforced, as in cases of strictly vendors' liens arising by implication upon an absolute deed for land, or mortgages given to secure a debt other than for the purchase-money.

5. PURCHASER—SUPERIOR TITLE—NOTICE.—When a mortgage is given simultaneously with the deed to secure the purchase-money, or a lien to secure the purchase-money is expressly reserved in the deed itself, the superior title remains with the vendor; and a subsequent purchaser being charged with notice of whatever is apparent upon the face of his chain of title, takes subject to the superior title. To protect himself, he must do equity, and redeem by payment of the purchase-money.

6. SAME.—If in such a case the original vendor brings suit, in the nature of a bill to foreclose and bar the equity of redemption, the subsequent purchaser, if made a party, will be bound thereby. If, however, he should not be made a party, although his equity of redemption might

not thereby be barred, yet, in a contest of title between him and the original vendor, the superior title of the latter must prevail, unless in a proper case, under appropriate allegations and proof, the equities of the former can still be enforced.

APPEAL from Harris.   Tried below before the Hon. James Masterson.

All that is necessary to a proper understanding of the case is carefully stated in the opinion.

*Crank & Webb,* for appellant.

I. The petition should have excluded the idea that Wells died testate; for if he left a will, the plaintiffs below, if devisees, should have declared upon the will.

It is not alleged how the plaintiffs below claim under James Wells and Jane Wells as their heirs, and therefore what estate they claim under them, or either of them, does not appear.

It does not appear by the petition whether the lots sued for were the community property of James and Jane Wells, nor is it alleged whether they were ever married or not.   (Sayles' Plead., secs. 63, 65.)

II. The court erred in allowing the plaintiffs, in rebuttal, to read in evidence the judgment in favor of James Wells against Girard, Hedenberg, and Vedder, over the objections thereto made by the defendant, as in her bill of exceptions on file.

On August 14, 1839, C. J. Hedenberg and Philip V. Vedder, acting by said Hedenberg as his attorney in fact, as shown by previous evidence of the defendant, conveyed by deed to S. C. Whitcomb the lots sued for, and the deed was recorded on August 16, 1839. The defendant also showed that said Whitcomb, on August 17, 1839, conveyed said lots to Calvin Cutter, by deed recorded on the same day, of which recorded deeds said James Wells was bound to take notice; and also that said defendant held under Whitcomb, Cutter, and others; and neither of them, nor any of those holding under them in the chain of title of the defendant in evidence, having been made parties to the suit in which said judgment was recorded,

said defendant is not affected by said judgment, it having been rendered years after said deeds to Whitcomb and Cutter were recorded.

III. The judgment is contrary to the law and the evidence. The defendant, by her evidence, showed that she was the owner of the title which S. C. Whitcomb acquired in the property sued for; and said judgment in favor of Wells, read in evidence in rebuttal by the plaintiffs, having been rendered years after the deeds to Whitcomb and Cutter were recorded, thereby giving notice of said deeds to said Wells, and neither said Whitcomb nor Cutter, nor any one claiming under them down to and including said defendant, having been made a party to the suit in which the judgment was rendered, said judgment and the sale and deed under it could not affect the title of the defendant in the property. (Davis *v.* Rankin, 50 Tex., 279; Byler *v.* Johnson, 45 Tex., 509; Pitman *v.* Henry, 50 Tex., 357; Peters *v.* Clements, 46 Tex., 114; Preston *v.* Breedlove, 45 Tex., 47; Hall *v.* Hall, 11 Tex., 546; Chapman *v.* Lacour, 25 Tex., 94; Mills *v.* Traylor, 30 Tex., 7; Webb *v.* Maxan, 11 Tex., 686; Buchanan *v.* Monroe, 22 Tex., 542; Carter *v.* Attoway, 46 Tex., 108; Turner *v.* Phelps, 46 Tex., 251; Floyd *v.* Borland, 33 Tex., 777; Ballard *v.* Anderson, 18 Tex., 377; 2 Hill. on Mort., p. 87; Story's Eq. Pl., secs. 193, 195, 197; 4 Kent's Comm., 185; Ram. on Jud. Sales, secs. 176, 199, 382; Freem. on Judg., secs. 162, 205; 1 Dan. Chan. Prac., 240; Caldwell *v.* Taggart, 4 Pet., 190; Wendell *v.* Rensselaer, 1 Johns. Ch., 349; Whiting *v.* Bank of the United States, 13 Pet., 6.)

IV. That the deed from James Wells and his wife to Girard, Hedenberg, and Vedder was an executed contract, and vested the land in them with the right of present enjoyment.

V. That the lien retained in said deed for the unpaid purchase-money therein recited was but the evidence of said lien, and was not a mortgage.

The deed conveys the property to them, "their heirs and assigns, forever," and recites the amounts of purchase - money

paid and unpaid, and retains a lien on the land until the unpaid purchase-money should be fully and duly made. And said Wells and wife, in the deed, covenant and agree with Girard, Hedenberg, and Vedder that they lawfully owned and possessed the land, and were seized thereof in fee-simple; that they had good right and lawful authority to convey the land, and that they would warrant and defend the title against all persons whatsoever; and for the performance of said covenants and agreements they bound themselves, their heirs, executors, administrators, and assigns.

VI. On the other hand, a separate mortgage given for purchase-money reinvests the legal estate in the vendor or mortgagee, subject to be defeated on the payment of the purchase-money. (4 Kent's Comm., p. 154; 2 Bouv. Law Dic., word MORTGAGE.)

VII. Where a separate mortgage to secure purchase-money is executed, the vendor, until the money is paid, has the superior right to the land. (Dunlap *v.* Wright, 11 Tex., 604; Stow *v.* Tifft, 15 Johns., 458; Holbrook *v.* Finney, 4 Mass., 567; Jackson *ex dem.* Bruyn *v.* Dewitt, 6 Cow., 316.)

VIII. The law presumes, after so long a lapse of time, that Hedenberg had a power of attorney from Philip V. Vedder, giving him full power to make the deed in evidence to Whitcomb.

The deed from Hedenberg and Philip V. Vedder to Whitcomb is dated August 14, 1839, and was recorded on August 16, 1839; and in making the deed said Hedenberg acted for himself and as attorney in fact for said P. V. Vedder. (Johnson's Administrator *v.* Shaw, 41 Tex., 428; Dailey *v.* Starr, 26 Tex., 562; Watrous *v.* McGrew, 16 Tex., 513; Veramendi *v.* Hutchins, 48 Tex., 531; Johnson's Administrator *v.* Timmons, 50 Tex., 521.)

IX. Whitcomb or Cutter, if either had been made a party to the suit for foreclosure brought by Wells, would have had the right to set up any defenses that Girard, Hedenberg, and Vedder could have set up, and even defenses which they

could not have set up, such as a combination between them and Wells, if any, to defeat the right acquired by Whitcomb or by Cutter; and further, that Whitcomb or Cutter, in equity, could have claimed that all the property, except the lots in suit, should be sold before selling them, or that the lots would have been subject only to their proportionate part of the purchase-money unpaid by Wells. (Hall v. Hall, 11 Tex., 548; Webb v. Maxan, 11 Tex., 686; Peters v. Clements, 46 Tex., 114; 1 Story's Eq. Jur., sec. 470; 2 Story's Eq. Jur., sec. 1233.)

*W. P. Hamblen*, for appellee.

· I. The only point in the appeal is: Does the person holding a title from Girard, Hedenberg, and Vedder, who owed the purchase-money, and for the payment of which an express lien was retained in their deed from Wells, have a better title than the person holding a title through the foreclosure of such lien and sale?

Appellee holds the negative. It is not an open question. (Webb v. Maxan, 11 Tex., 686; Dunlap v. Wright, 11 Tex., 604; Jackson v. Palmer, *supra*, 427.)

II. An express lien retained in a deed to secure the purchase-money, and a mortgage from the vendee to the vendor for the like purpose, are one and the same thing. (Webb v. Maxan, 11 Tex., 686; Tiernan v. Robson, *supra*, 411; Wright v. Dunlap, 11 Tex., 604.)

BONNER, ASSOCIATE JUSTICE.—The material facts necessary to a proper understanding of this opinion may be thus briefly stated.

The suit was brought by the appellees, Wells *et al.*, on March 19, 1879, and is in the nature of an action of trespass to try title to certain lots in the city of Houston, and to remove clouds from their title to the same.

Both parties claim under a patent to James Wells, the ancestor of plaintiffs, as a common source of title, but it does not appear that either one is in actual possession.

Wells *et al.* claimed title in themselves as heirs of James Wells and his wife, Jane Wells, by general allegation to that effect in their petition, and proved their heirship as alleged.

Ufford demurred to the petition, and the judgment over-ruling the same is assigned as error.

In addition to the demurrer, Ufford pleaded not guilty, and further, in reconvention, alleged ownership of the property in herself in fee-simple, and that the claim of the plaintiffs thereto was unfounded, unjust, and illegal; and she prayed for judgment for the property and for a decree quieting her title, and for costs and all proper relief, &c.

She introduced in evidence a chain of title substantially as follows:

1. General warranty deed from James Wells and Jane, his wife, to A. Girard, C. J. Hedenberg, and Philip V. Vedder, dated October 3, 1838, and recorded April 5, 1839. The consideration expressed in this deed is $4,910, of which $250 is acknowledged in the deed to have been paid, $250 more to be paid on Wells and wife making from the government a title perfect in themselves, the balance to be paid in equal payments of six, nine, and twelve months from the time of perfecting the title, and a lien was retained on the land until the payments prescribed should have been fully and duly made.

2. Deed from Hedenberg and Vedder to S. C. Whitcomb, of date August 14, 1839, and recorded August 16, 1839.

3. Deed from Whitcomb to Calvin Cutter, dated and recorded August 17, 1839.

4. Mesne conveyances from Cutter to appellant Ufford.

Wells *et al.*, in rebuttal, to defeat this chain of title, proved judgment rendered May 25, 1847, in favor of James Wells against Girard, Hedenberg, and Jacob N. Vedder, as sole heir of Philip V. Vedder, for the sum of $1,594.58, amount of original purchase-money unpaid, with order of sale of the land; also sheriff's sale and deed to the land thereunder, in consideration of said sum of $1,594.58, to James Wells, of date August 3, 1847, and recorded December 18, 1847.

To the introduction of this testimony in rebuttal, Ufford objected, because neither Whitcomb, Cutter, nor other purchaser under recorded deeds from the original vendees, were made parties. The objections were overruled and this also assigned as error.

Upon the final trial had before the judge presiding, a jury having been waived, judgment was rendered for Wells *et al.*, plaintiffs below.

The first error assigned is, that " the court erred in overruling the demurrer and special exceptions of the defendant, and each of them, to the petition of the plaintiffs, because well taken under the law."

The special exceptions are : That it is not alleged whether James Wells died testate or intestate; nor what estate the plaintiffs claim in the lots sued for; nor whether James Wells was ever married or not.

Considering the character of the suit, we are of opinion that the court did not err in overruling the exceptions.

The petition stated a *prima-facie* case in favor of Wells *et al.*, and its alleged defects were more matters of defense by appellant than of necessary affirmative allegation by appellees.

The third and fourth assignments of error are, substantially, that " the court erred in allowing the plaintiffs, in rebuttal, to read in evidence the judgment in favor of James Wells against Girard, Hedenberg, and Vedder, over the objections thereto made by the defendant, as in her bill of exceptions on file"; and that " the judgment is contrary to the law and the evidence, because defendant, by her evidence, showed that she was the owner of the title which Whitcomb acquired in the property sued for, and said judgment in favor of Wells, read in evidence in rebuttal by the plaintiffs, having been rendered years after the deeds to Whitcomb and Cutter were recorded, whereby notice was given of said deeds, and as neither Whitcomb, Cutter, nor any one claiming under them down to and including defendant, were made a party to the suit in which the judgment was rendered, the same, and the sale and deed under

it, could not affect the title of the defendant in the property."
These present the material questions in the case, and will be
considered together.

Under our decisions, there is a distinction, as affecting di-
rectly the question of title, between those cases in which the
superior title, in sales of land, remains in the original vendor,
and those in which he parts with this superior title and has sim-
ply a lien on the land to secure the payment of the purchase-
money.   Although a subsequent purchaser is a proper party in
all suits to enforce a prior lien, yet he may not be a necessary
party except to bar his equity of redemption.

If the superior title remains in the plaintiff in the foreclosure
suit, and the title of the subsequent purchaser is subordinate
thereto, the mere fact that he was not made a party to the
enforcement of the lien for the purchase-money against the
original vendees, although it might operate to prevent any
prejudice to his right to the equity of redemption, yet it could
not prejudice the superior title of the plaintiff.   If plaintiff's
title was superior before the judgment of foreclosure and the
sale thereunder to himself, this would not make it less so.

An examination of the many cases from this court cited by
appellant, in which the subsequent purchaser or incumbrancer,
if known, has been held to be a necessary party to a suit to
foreclose a prior lien in order to affect his title, will be found
to be those in which he held under the superior legal title,
subject only to a claim for a lien sought to be enforced, as in
cases of strictly vendors' liens arising by implication upon an
absolute deed for land, or mortgages given to secure a debt
not the purchase-money.

The rule, however, is different in those cases in which, to
secure the rights of the vendor of land, and to enforce the per-
formance or cancellation of the contract without prejudice to
those rights, the superior title does not pass to the vendee in the
first instance, but remains with the vendor, either because the
contract was executory, as where bond for title has been exe-
cuted upon condition of payment, or where a mortgage for the

unpaid purchase-money was executed by the vendee simultaneous with the deed, or where an express lien is retained, as in the case now before the court, in the deed itself, for the payment of the purchase-money. (Webster *v.* Mann, *supra,* 416.)

Whatever, technically, may be the distinction between a mortgage given simultaneously with the deed to secure the purchase-money, and a lien therefor expressly reserved in the deed itself, under our decisions their practical effect seems to be the same.

In such cases the superior title remains with the vendor, and a subsequent purchaser being charged with notice of whatever is apparent upon the face of his chain of title, takes subject to be defeated by this superior title. To avoid this, he must himself do equity before he can ask equity, and redeem by payment of the purchase-money. If the original vendor seeks to protect his rights by suit in the nature of a bill to foreclose and bar the equity of redemption, the subsequent purchaser, if made a party, will be bound thereby. If, however, he should not be made such party, although his equity of redemption might not thereby be barred, yet, in a contest of title between him and the original vendor, the superior title of the latter must prevail, unless in a proper case, under appropriate allegations and proof, the equities of the former can still be enforced. Neither the allegations nor the evidence, on the part of appellant, present such case here for our consideration.

In our opinion, the above alleged errors are not well taken, and there being no apparent error of record, the judgment below is affirmed.

AFFIRMED.

[Opinion delivered February 23, 1880.]