THE STONE LAND AND CATTLE COMPANY ET AL. V. E. BOON.

No. 6095.

1. **Archives in Land Office—Copies of Muster Rolls.**—The Act of February 9, 1850, "For the relief of those who fell with Fannin" and others, required the Adjutant-General to make out from the records of his office copies of the muster rolls of the several companies that were under Fannin, and to deliver the same, certified under his seal of office, to the Commissioner of the Land Office, who was required to file the same among the archives appertaining to his office. Copies given of said archives so made can be given by the Commissioner of the General Land Office, which are evidence under the statute where the original rolls would be.

2. **Void Administration.**—Jurisdiction to grant letters of administration is not shown when the application for letters of administration is made fifteen years after the death of the intestate and there is no allegation of indebtedness of the estate.

3. **Case Adhered To.**—Duncan v. Veal, 49 Texas, 603, adhered to in a case alike in material facts.

4. **Void Administration Sale.**—Want of jurisdiction in the court ordering a probate sale is fatal to the title obtained under such proceedings. They are void.

**5. Rights of Vendor in Executory Contract for Sale of Land.**—The vendor retaining a lien for the purchase money until he elects his remedy may sue either for the land or for the purchase money with foreclosure. This right is not lost if the vendees in default in the payment sell to another with notice and suit for foreclosure be brought against the original vendee and be prosecuted to judgment and sale, the vendor buying. The vendor is no less owner of the superior title after than before these proceedings, and he can proceed against the second purchaser either for the land or to foreclose the lien.

**6. Election of Remedy.**—An election is not made by the vendor filing suit and asking a decree of foreclosure. By amendment he may sue for the land.

**7. Equities.**—Whether the unpaid vendor holding the vendor's lien sues for the land or to subject it to sale for the purchase money, the defendant can avail himself of any equities he may have. To do so he must plead the facts and seek the appropriate relief.

**8. Tender of Purchase Money.**—In a suit for the land the defendant having the right to acquire it by payment of the purchase money should make an unconditional tender of the money and bring it into court. Relying upon other defenses and losing, he can not complain of not getting the relief he did not ask for in his pleadings, nor by doing equity earn the right to from his adversary.

APPEAL from Denton. Tried below before Hon. F. E. Piner.
The opinion states the case.

*Bryant & Dillard,* for appellants. —1. The court erred in overruling the special exception to plaintiff's first amended original petition contained in the first amended original answer of the defendant Lazarus. The plaintiff having sued for the foreclosure of his lien on the land described in his original petition, could not abandon this action and sue in trespass to try title, and especially was this true after defendants had filed their answer admitting the indebtedness and offering to pay it upon a good title being made. Cooper v. Singleton, 19 Texas, 260; Estes v. Browning, 11 Texas, 247; Tom v. Wollhoeffer, 61 Texas, 281.

2. When a vendee recovers against a remote vendor upon a breach of warranty of title the measure of his recovery in case of a total failure of consideration is the purchase money paid by his immediate vendor and interest, and in case of a partial failure of consideration it is such proportion of the purchase money and interest as the part of the consideration that has failed be to the whole consideration. And this is the rule of damages irrespective of the amount paid by this vendee himself. 2 Wait's Act. and Def., pp. 378, 394; Pence v. Duval, 9 B. Monroe, 48; Rawle on Conv., 334; Daugherty v. Duvall, 9 B. Monroe, 57; Hunt v. Orwig, 17 B. Monroe, 73.

*J. Jenkins,* for appellant Baker. —1. Evidence aliunde or dehors the record will not be heard to impeach the validity of a judgment of a court of general jurisdiction upon a collateral attack thereon, when every presumption of its validity is invoked to sustain its validity. Fitch & Henderson v. Boyer, 51 Texas, 336.

2. Every presumption will be indulged in favor of the validity of judgments of courts of general jurisdiction assuming to act upon a subject matter within the ordinary scope of authority. Hart. Dig., arts. 1110, 1111; Fitch & Henderson v. Boyer, 51 Texas, 336; Murchison v. White, 54 Texas, 78.

3. The Probate Court of Harris County, Texas, in exercising jurisdiction in entertaining administration upon the estate of F. Petreswick, deceased, was acting within the ordinary scope of its authority and jurisdiction; and even if its proceedings did not show all the facts necessary to give it jurisdiction, and even if the record be silent as to some of the facts, yet its orders and decrees in that connection are entitled to such absolute verity that the presumption will be indulged in a collateral attack, when not contradicted by the record itself, that all facts did exist which were necessary to bring the jurisdiction of the court into exercise. Williams v. Ball, 52 Texas, 603; Tennell v. Breedlove, 54 Texas, 540; Fitch & Henderson v. Boyer, 51 Texas, 336; Neal et al. v. Bartleson et al., 65 Texas, 478.

4. When it is sought to impeach the validity of the judgment of a court of general jurisdiction acting within the scope of its authority, it must be tested by the record and the presumptions arising thereon, and unless it affirmatively appears from the record itself—and for the purpose of this test the entire record must be taken together to show that the court did not properly acquire jurisdiction—then without such affirmative proof the presumption is indulged that the jurisdiction of the court in the particular case properly attached. Martin et al. v. Robinson et al., 67 Texas, 368; Guilford v. Love, 49 Texas, 715; Murchison v. White, 54 Texas, 78; Kleinecke v. Woodward, 42 Texas, 311.

*Ferguson & Davidson*, for appellee. — 1. Appellee brought suit in Denton County, and procured a foreclosure of his vendor's lien against his vendee, and a sale and purchase by him did not estop him from suing to recover the land against one in possession at the rendition of the judgment, holding under his immediate vendee, but who was not a party to the foreclosure proceedings, he having reserved the vendor's lien in his deed of conveyance to secure the payment of the purchase money. Foster v. Powers, 64 Texas, 248; Ufford v. Wells, 52 Texas, 617; McAlpin v. Bennett, 19 Texas, 500.

2. Bringing this suit by appellee to foreclose his vendor's lien did not estop him from afterward amending his petition and suing for a recovery of the land, the contract of sale having been violated by the vendee. Rev. Stats., art. 1192; Scarborough v. Arrant, 25 Texas, 129; Chapman v. Sneed, 17 Texas, 428; McAlpin v. Bennett, 19 Texas, 500.

3. After the expiration of nearly three years after maturity of the note appellee had the right to ask for the restoration of the land, and especi-

ally is this true when the real defendant Lazarus, a purchaser for a merely nominal consideration pending this litigation, is a mere volunteer, seeking by all the machinery of his ingenuity to defeat the title under which he purchased for the purpose (at least apparently) of claiming more than twenty times the sum paid by him as damages for a breach of warranty of title.   Howard v. Davis, 6 Texas, 181; Dunlap v. Wright, 11 Texas, 597; Baker v. Compton, 52 Texas, 261; McKelvain v. Allen, 58 Texas, 383; Estes v. Browning, 11 Texas, 247; Foster v. Powers, 64 Texas, 248.

4.   The estate of F. Petreswick vested immediately in his heirs, subject only to the payment of his debts, and there being no debts there could be no legal administration.   Pasch. Dig., art. 1373; Duncan v. Veal, 49 Texas, 610; Blair v. Cisneros, 10 Texas, 45; Fisk v. Norvell, 9 Texas, 16; Chinn v. Taylor, 64 Texas, 385.

HENRY, ASSOCIATE JUSTICE.—In the year 1882 E. Boon, by his deed containing a clause of general warranty, sold and conveyed to Stone & Dickey the F. Petreswick and Claiborne Wright surveys of land.   The consideration of the sale was $3107.25, of which $1553.25 was paid in cash and for the balance two notes for $776.32 each were given.   The deed expressly reserved a lien to secure the payment of these notes, due respectively one and two years after date.

The first note seems to have been paid. ·

The Petreswick survey was sold by Stone & Dickey, and by conveyances under them the Stone Cattle and Pasture Company had a deed for and were in possession of said survey on the ——— day of May, 1885.

On the last mentioned date Boon instituted a suit against Stone & Dickey to foreclose the vendor's lien and recover judgment upon the last due of said notes, not making the Stone Cattle and Pasture Company a party to the suit.   He recovered judgment against Stone & Dickey, foreclosing his lien on both of said surveys, and purchased them at sheriff's sale made under said judgment for an amount less than his judgment, which was credited on the judgment, and he received from the sheriff a deed for the two tracts of land.

In December, 1885, Boon instituted this suit against the Stone Cattle and Pasture Company to foreclose his vendor's lien on both of said surveys of land.   Subsequently to the institution of this suit the interest of the Stone Cattle and Pasture Company in said surveys was sold under a judgment against it in favor of one of its creditors and purchased by Sam Lazarus, who received from the sheriff a deed therefor.   After such purchase Lazarus came into the suit as a party defendant.   At the time that Lazarus became a party, plaintiff amended his petition so as to change it from a suit to foreclose the vendor's lien on the land to one to try title and for possession.

Lazarus and the Stone Cattle and Pasture Company answered this amended petition by exceptions to its legal sufficiency, by pleas of general denial and not guilty, and by special answer alleging substantially, after setting up in detail the foregoing proceedings, as follows:

That there was a superior outstanding title in one W. R. Baker to the Petreswick survey, growing out of a purchase of the same by Baker from the administrator of said Petreswick, at a sale made by him in 1851 under an order of the County Court of Harris County, made in the administration of said Petreswick's estate, and that said Baker was then asserting his superior title to said survey, and praying that said Baker be made a party to the suit and cited to appear, etc. That neither himself nor codefendant nor their vendors under Boon knew of said outstanding title when they made their purchases and received their deeds. That by his purchase he has become entitled to the benefit of the covenant of warranty contained in the deed from Boon to Stone & Dickey. That he would long before have made payment of the unpaid balance of purchase money against said land but for said defect in plaintiff's title thereto.

He prayed that plaintiff be required to contest said question of title with Baker, and that if Baker prevailed he (Lazarus) have judgment against plaintiff on account of the breach of the warranty in his deed to Stone & Dickey, etc.; or if plaintiff's title to the land should prevail he alleged his willingness to bring into court the unpaid balance of the lien debt, and prayed to be allowed to do so.

He alleged that he had paid a valuable consideration for the land, and that plaintiff was insolvent.

The Stone Cattle and Pasture Company adopted this answer of Lazarus.

The court sustained plaintiff's exceptions to it, and it was stricken out. Defendants, declining to amend, went to trial upon their pleas of general denial and not guilty.

On the 23d day of December, 1886, W. R. Baker filed his petition of intervention, the record showing leave given him to do so on January 3, 1887, and pleaded that it was true as alleged in the answer of defendant Lazarus that he was the owner of the Petreswick survey of land.

The case was tried without a jury and judgment rendered in favor of plaintiff for the Petreswick survey and in favor of defendants for the Wright survey. From this judgment the defendants perfected an appeal, and all parties assign error—defendants and intervenor because of the recovery of the Petreswick survey by plaintiff, and plaintiff because of the recovery of the Wright survey by defendants.

The court reduced to writing its findings of fact and conclusions of law, substantially finding, in addition to the matters above stated, that the F. Petreswick survey was patented to his heirs on the 4th November,

1874, for the 1600 acres of land in controversy, by virtue of certificate No. 926, issued by Ben F. Hill, Adjutant-General, on the 2d day of September, 1851. That said F. Petreswick was a soldier in P. S. Wyatt's company Huntsville (Alabama) Volunteers from the 25th December, 1835, to 29th February, 1836, and was massacred at Goliad under Fannin, in whose command he was. That one Justine Castanie, on the 19th day of June, 1851, filed in the County Court of Harris County, Texas, his application for letters of administration upon the estate of said Petreswick, and that such letters were granted at the June Term, 1851, of said court.

That by order of said County Court said administrator sold said Petreswick's land certificate to W. R. Baker, and the sale having been reported to said court and approved at its November Term, 1851, a deed was ordered to be made, which was done on the 2d day of December, 1851, the purchase money having been paid. That this deed was first recorded in Archer County (where the land lies) on December 13, 1886. That the evidence shows a chain of deeds from the plaintiff Boon to the defendant Lazarus for the Petreswick survey, but not for the Wright.

The court's conclusions of law upon its findings of fact were substantially as follows:

1. That the sale to Stone & Dickey was an executory contract, and that by reason of the purchase of the land by plaintiff under his judgment against them he became invested with as complete a title to the land as he had before he conveyed it to them.

2. That the defendants acquired no title to the Petreswick survey by virtue of any of the deeds under which they claimed it, but that plaintiff having failed to show that defendants claim the Wright survey under him or a common source, or that he holds title to it from the government, the defendants hold the better title to that survey.

3. That the entire proceedings in the County Court of Harris County were null and void.

The intervenor Baker assigns error, calling in question:

1. The findings of fact that Petreswick was a volunteer from Huntsville, Alabama, and that he had been dead fifteen years when administration was opened upon his estate.

2. The conclusions of law that the administration and the proceedings had in it were null and void.

3. The introduction of certain evidence.

The findings that Petreswick was a volunteer from Alabama and that he died in 1836 are predicated upon copies of the certificate to him upon which the patent for the land in controversy was granted, and of the muster roll of the captain of his company, certified to by the Commissioner of the General Land Office.

The muster roll shows that he was a volunteer from the State of Ala-

bama, and the certificate states that he "was massacred with Fannin at Goliad, and is entitled to nineteen hundred and twenty acres of bounty land." The objection to the muster roll was that it was not a copy of any proper archive, and did not purport to be a copy of the original muster roll, but to be merely a copy of a copy.

The first section of the Act of February 9, 1850, "for the relief of those who fell with Fannin" and others, required the Adjutant-General to make out from the records of his office copies of the muster rolls of the several companies that were under the command of Fannin, and deliver the same, certified under his seal of office, to the Commissioner of the General Land Office, who was required to file the same among the archives appertaining to his office.

There was no error in admitting copies of certificate and muster roll from the Land Office, and they sustain the finding of the court.

The order appointing the administrator upon the estate of Petreswick was made in June, 1851, and the other proceedings, including the sale of the land to Baker and its approval by the court, having intervened, the deed of the administrator was executed the 2d day of December, 1851. The Act of January 14, 1841, held by this court in the case of Duncan v. Veal, 49 Texas, 603, to have been in force at the date when the administration upon the estate of Petreswick was ordered, may be looked to to determine whether there was error in holding this administration and all proceedings had in it nullities.

That act directed "That no administration shall be granted on the estate of any person who served in the Georgia Battalion, or any other volunteer from a foreign country who may have fallen in the battles of the Republic or otherwise died in the limits of the same, to any person who shall not show himself entitled to the same as next of kin or shall not produce an authority from the heirs or next of kin of such deceased soldiers authorizing him to take administration of the same."

In this case the petition for letters filed fifteen years after the death of Petreswick did not allege the existence of any indebtedness or show any necessity for an administration of his estate. It alleged that "he died several years since," and was "a transient person." "That there are no kindred of the deceased known to petitioner in Texas and that he has been requested to open said estate by the heirs." Whose heirs made the request or how to open the estate is not alleged. The allegation that the deceased had no kindred in Texas "within the knowledge of the petitioner" is not equivalent to an allegation that there were none in existence. Even if these objections were not sufficient to show a want of jurisdiction to grant the administration, the fact that it was opened fifteen years after the death of Petreswick without an allegation of indebtedness, and when under the longest period given by the laws any debt

that he may have owed and that had matured at the time of his death would have been barred, would be.

This case is in all respects very similar to the above case of Duncan v. Veal, in which Justice Moore uses the following energetic language: "The time and circumstances under which the pretended letters were granted render it obvious that although nominally he obtained letters of administration on the estate of a deceased volunteer soldier of the Republic he in fact administered upon that of his heirs, with which he nor his confederates had any right to intermeddle." See Chinn v. Taylor, 64 Texas, 387; Paul v. Willis, 69 Texas, 264.

We conclude there was no error in holding the title under which the intervenor claimed null and void, and so holding it becomes unnecessary to consider the error assigned by him as to the admissibility of other evidence affecting him. This view of Baker's title dispenses with the necessity of discussing the assignments of error of defendants with regard to it in support of their claims growing out of an alleged breach of warranty and their defense of outstanding title.

The undisposed of objections of appellants are substantially that the court erred in the following respects:

1. In holding that plaintiff after having first sued in this action to foreclose his lien could abandon that action and sue to recover the land after defendants had answered, admitting the indebtedness and offering to pay it upon a good title being made.

2. And in not allowing defendants to test the goodness of plaintiff's title and pay off the balance of the purchase money and hold the land if plaintiff showed title in himself.

That a deed for land expressly retaining a lien for unpaid purchase money does not divest the vendor of his title to the land is too well settled in this State to require discussion. Until he has elected he can either sue for the land or for the purchase money with foreclosure. What may amount to an election to pursue the remedy to foreclose his lien, after which he can not recover the land, may not be easy to prescribe a definite rule for.

The case of Ufford v. Wells, 52 Texas, 617, in part at least furnishes the solution of the question now presented, and we are not at liberty to depart from it. In that case as in this the vendor conveyed the land by a deed on its face reserving a lien. The original vendee conveyed the land to a third party without having paid the purchase money, and afterwards the original vendor sued the original vendee, without making the subsequent vendee a party, to recover his debt and foreclose his lien, and at the sale by the sheriff under the judgment foreclosing his lien the original vendor purchased the land and then brought an action of trespass to try title against the subsequent vendee. He recovered the land in the District Court and this court affirmed the judgment, Justice Bon-

nier saying: "If plaintiff's title was superior before the judgment of foreclosure and the sale thereunder to himself this would not make it less so."

If prosecuting a suit for the purchase money to a foreclosure and sale of the property does not amount to an election to afterwards treat the transaction as a conveyance of the title subject to the enforcement of the lien, at least as to all parties having rights and obligations derived directly through it, we do not think it can be consistently held that when the vendor, who has the right either to sue for the recovery of the land or to foreclose his lien, has done no more than to file his petition praying to foreclose the lien that that alone ought to prevent him from amending his petition and praying for his other remedy, a recovery of the land.

In the case of Ufford v. Wells it is suggested that whether the vendor sues to foreclose his lien or recover the land, the original or any subsequent vendee has the right to set up his equities.

We think the contrary has not been held by this court in any case, and we entertain no doubt about the right of any vendee, near or remote, by proper pleadings to protect himself in all of his equities as fully when the vendor's suit is to recover the land as when it is to foreclose the lien, with such differences only as the character of the proceedings and the modes of enforcing different judgments may make.

For instance, if in this case the suit and judgment had been only to enforce the lien, the defendants, without defending at all, could at any time before the sale have paid up the judgment and cleared their title.

This suit being to recover the land defendants were required to plead their defenses and make or tender payment of the purchase money before judgment and not afterwards. If the defendants in such case, where the suit is by one holding the title for the recovery of the land, elect to depend upon the ordinary defenses, such as title in themselves or outstanding title in another, the statute of limitations, or the inability to show title in himself by the plaintiff, they may do so by the usual modes of pleading and evidence; but if in such a case as this the party in possession without title but with the equitable right to acquire it by the payment of a sum of money desires to have that relief, he must come, as suggested in Ufford v. Wells, "doing equity before he can ask equity, and redeem by payment of the purchase money;" doing this "under appropriate allegations his equities can still be enforced." 52 Texas, 620. We think a vendee so situated and failing to pay the purchase money before suit, if the vendor elects to sue for the land, can only get protection through a court of equity by bringing the money into court and placing it in the power of the court.

The defendants not having paid or tendered the balance of the purchase money or pleaded an unconditional offer to pay it, but having re-

sorted to the defenses usually made in actions to try title, we think that upon their failure .to establish these defenses plaintiff was entitled to have a judgment for the recovery of the land to which he established title.

The plaintiff's assignment of error to the court's finding as to the Wright survey is not well taken. The evidence sustains the finding.

We find no error in the record for which the judgment ought to be reversed and it is affirmed.

*Affirmed.*

Delivered April 23, 1889.