KYNARD et al. v. TUCKER.    (No. 8042.)

(Court of Civil Appeals of Texas. Ft. Worth. Nov. 28, 1914.)

1. VENDOR AND PURCHASER (§ 269*) — VENDOR'S LIEN — ENFORCEMENT — EQUITIES OF ADVERSE PARTY.

If a vendor can have foreclosure, he is limited to that remedy, and is not permitted to assert his superior title against his vendee or those claiming under him, when the equities of such persons so require.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent.Dig. § 759–763; Dec.Dig. § 269.*]

2. VENDOR AND PURCHASER (§ 260*) — VENDOR'S LIEN — ENFORCEMENT — EQUITIES OF ADVERSE PARTY.

A vendor of a section of land retained a vendor's lien, as shown by vendor's lien notes and stipulation in the deed. A remote purchaser, assuming the payment of the notes, reconveyed the south half to his grantor, who assumed the payment of the notes, and conveyed to plaintiff the north half for a valuable consideration, without assumption of payment of the notes. Plaintiff had notice of the lien. Subsequently defendant obtained title to the south half by quitclaim, and also the vendor's lien notes, and obtained a judgment removing clouds on his title on the entire section, but plaintiff was not a party to the action. Held, that plaintiff had such equities as against the enforcement of the vendor's lien as to require satisfaction first out of the south half and a sale of his half for any balance.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 664–669; Dec. Dig. § 260.*]

3. VENDOR AND PURCHASER (§ 285*)—PURCHASERS OF INCUMBERED PROPERTY — PERSONAL LIABILITY.

Where a purchaser of a part of a tract subject to a vendor's lien for the price did not assume to pay the debt or any part thereof, the holder of the vendor's lien notes could not recover a personal judgment against him.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 800–807; Dec. Dig. § 285.*]

**4. VENDOR AND PURCHASER (§ 260\*) — VEN-DOR'S LIEN—ENFORCEMENT.**

Where defendant acquired vendor's lien notes for a section and a quitclaim deed of the south half and a judgment for the whole section, the north half of which had been previously purchased for a valuable consideration by plaintiff, who had notice of the lien, but who did not assume to pay it, and who was not a party to the action in which the judgment was rendered, defendant must first ascertain the value of the south half, and, if that be less than the debt, he could foreclose for the balance against the north half.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 664–669; Dec. Dig. § 260.\*]

Appeal from District Court, Eastland County; Thomas L. Blanton, Judge.

Action by M. O. Tucker against J. B. Kynard and another. From a judgment granting relief, defendants appeal. Affirmed.

Harris & Burton, of Ft. Worth, for appellants. J. M. Wagstaff, of Abilene, for appellee.

DUNKLIN, J. Chas. J. Canda and others sold to J. F. Battle section 25, township 7, block 51, Texas & Pacific Railway Company survey in Reeves county, in part consideration for which conveyance Battle executed eight vendor's lien notes payable to the grantors in the sum of $192 each. In this deed, and also in the notes given, a vendor's lien was expressly retained to secure the payment of the note. Battle then sold the section to J. T. H. Lipscomb, who assumed the payment of the notes. Lipscomb sold the survey to A. H. Darnell in consideration of his assumption of the payment of the notes. Darnell then reconveyed the south one-half of the survey to Lipscomb, who, in consideration of that conveyance, assumed the payment of the vendor's lien notes above mentioned. Eight days later Darnell sold the north one-half of the survey to M. O. Tucker by warranty deed for a cash consideration of $3,200. This deed was duly recorded. There were several subsequent sales of the south one-half of the survey; the grantee in the first being L. F. Sensabaugh, and in the second Frank Riley, both of whom assumed payment of the notes mentioned. Riley's title was later sold to W. W. Haggard by H. M. Hood, trustee, by virtue of a deed of trust executed by Riley to secure the payment of notes executed by him. W. W. Haggard in turn conveyed the same property to W. T. Banes. As consideration for that conveyance Banes executed vendor's lien notes, payable to Haggard, but it was expressly recited in the deed that those notes were inferior liens to the seven vendor's lien notes then outstanding in favor of Canda, one of the eight of said notes having already been paid. Banes and Battle then executed quitclaim deeds to J. B. Kynard and T. P. Boyd, by the terms of which they quitclaimed all the right, title, and interest in and to the entire survey. Prior to the

execution of that deed Canda and the other payees in the original vendor's lien notes mentioned instituted suits upon the entire survey to collect seven of the notes, alleging payment of the other note; Battle, Riley, and Banes and others being made defendants in the suit. Pending this suit the plaintiffs in the case conveyed the notes, and also the superior title outstanding in them, to Boyd and Kynard. Boyd and Kynard then intervened in the foreclosure suit, and by their plea claimed the superior title to the entire survey, and prayed for judgment therefor and for cancellation of all deeds held by Battle and other defendants and for the removal of the cloud from the plaintiffs' title by reason thereof. Judgment was rendered granting them that relief. In that suit, however, M. O. Tucker was not made a party. Boyd and Kynard paid taxes on the entire survey for the year 1912, and M. O. Tucker has never lived on nor improved the north one-half claimed by him.

The present suit was instituted by M. O. Tucker against Boyd and Kynard to recover the north one-half of the survey. In his petition plaintiff set out, substantially, the history of the title as shown above, specially alleging that he was not a party to the suit by Canda and others which resulted in a judgment in favor of Kynard and Boyd for the entire survey, and that he was not bound thereby. He further alleged that the defendants had actual and constructive notice of his claim of title; that he should be decreed title to the north one-half free from any of the notes in favor of Canda and his covendors, but that, if he should be mistaken in that claim, then he prayed that judgment be rendered establishing the amount of the indebtedness due on said seven notes; that the same be adjudged a prior lien on the south one-half of the survey; and that the south one-half be sold for the purpose of satisfying said indebtedness before resort to the north one-half. He further alleged that the south one-half of the survey was of greater value than the entire debt evidenced by said seven notes.

In their answer the defendants Kynard and Boyd, claimed the superior title to the entire survey as against plaintiff, and sought judgment accordingly, with the further prayer that plaintiff's claim of title be canceled and held for naught. Defendants further alleged that plaintiff had notice of such superior title before he purchased the north one-half of the survey. Defendants further set out the seven vendor's lien notes, and prayed for a foreclosure of the vendor's lien retained by Canda and his covendors as against the entire survey; this prayer being in the alternative to the prayer for recovery of title as against the plaintiff. Defendants further alleged the payment by them of $9.-60 taxes on the survey, and, as a part of the alternative plea mentioned above, they

also prayed for foreclosure of lien by reason of payment of those taxes.

Judgment was rendered denying defendants' prayer for recovery of title to the north one-half of the survey, but establishing an indebtedness in favor of the defendants upon the notes executed to Canda and others of $1,767.36, the amount paid therefor by the defendants, with a decree of foreclosure of vendor's lien upon the whole survey subject to the provision that the south one-half of the survey should be first exhausted to pay the indebtedness before resort to the north one-half, and that the north one-half be sold in the event only the proceeds of the sale of the south one-half should be insufficient to satisfy the indebtedness. From that judgment defendants Kynard and Boyd have appealed.

[1, 2] The first question to be determined is whether or not the superior title remaining in Canda and his covendors, of which Tucker had due notice at the time he purchased, and which superior title was acquired by Kynard and Boyd, should prevail as against Tucker's title to the north one-half of the survey. Notwithstanding the fact that Tucker was charged with notice of the superior title remaining in Canda and his associates, yet, if the holders of the superior title can be fully protected in their rights, equity would not sanction a decree forfeiting Tucker's title in favor of the superior title, if Tucker's failure to pay off the prior vendor's lien notes has not, under the rules of equity, deprived him of the right to claim protection. Kynard and Boyd insist that, as Tucker has never paid, nor offered to pay, said notes, he has no standing in a court of equity to deny their right to recover the superior title to the property. It will be noted, however, that in purchasing the north one-half of the survey Tucker did not assume the payment of the notes, and in his petition he expressly alleged that the south one-half of the survey, which, as to him, was primarily liable for debt, was of a value in excess of the amount due on the notes. Furthermore, after asserting a claim of title to the exclusion of the notes, he prayed that the entire survey be sold and the amount found to be due upon the notes to be satisfied first out of the proceeds of the south one-half of the survey before resort to the proceeds of the north one-half of the survey. Under those circumstances, we are of the opinion that it would be inequitable to say that he should be required to pay off the entire debt as a condition precedent to his resistance of the defendants' suit to recover title to the north one-half of the survey, when, as between him and his vendor and all other grantees in the several deeds above mentioned, he clearly had the right to have the south one-half of the survey exhausted for the payment of the debt before resort to the north one-half. While it is well settled that when a vendor's lien is expressly retained to secure the payment of purchase money for the land the superior title remains with the vendor, it is equally well settled that, if the vendor can have a foreclosure of his lien, and thus secure payment of the full purchase price of the land in accordance with the terms of his conveyance, he will be limited to that relief to the exclusion of the assertion of the superior title against his vendee, or any one claiming under him, when the equities of such persons so require. Pierce v. Moreman, 84 Tex. 596, 20 S. W. 821; Stone Land & Cattle Co. v. Boon, 73 Tex. 548, 11 S. W. 544.

[3, 4] According to the terms of the seven vendor's lien notes, there was due thereon at date of the judgment $2,126.13. Kynard and Boyd had purchased those notes for the sum of $1,767.36, which was the face value of the notes at that time, in March, 1912, the date of the defendants' purchase of the same, and which was nearly two years prior to the date of judgment. In the judgment rendered the court decreed foreclosure upon the entire survey for the amount so paid, and appellants complain that reversible error was committed in refusing a foreclosure for the sum of $2,126.13, the amount appearing to be due upon the notes at the date of the judgment. In the judgment it is recited that no proof was offered to show the value of the south one-half of the survey. As noted already, appellants were not entitled to any personal judgment against Tucker for the debt, because he had not obligated himself to pay the same. In the absence of a recovery of the land, the most that appellants could rightfully expect would be to subject Tucker's half of the survey to payment of the balance due on the notes after applying the value of the south one-half of the survey as a credit thereon. Appellants could not properly ask for a foreclosure of the lien against the south one-half of the survey, which was their own property. If they desired to sell the south half of the survey for the purpose of paying the notes, they could do so without the aid of the court, and we know of no decision that would grant them such aid. Instead of foreclosing the lien upon the south half of the survey, as well as the north half, the proper procedure would have been to ascertain the value of the south half, and, if that value was less than the amount of the debt, to have decreed a foreclosure for the balance against the north half of the survey. In the absence of proof, we cannot say that the value of the south half is less than the full amount appearing to be due upon the notes, and hence it does not appear that the error, if any, now complained of resulted in injury to appellants. Rule 62a, 149 S. W. x.

All assignments of error are overruled, and the judgment is affirmed.