INVESTORS SYNDICATE v. MAYFIELD et al.

No. 13382.

Court of Civil Appeals of Texas. Fort Worth.

May 22, 1936.

Rehearing Denied July 3, 1936.

McGown & McGown, Arthur Haddaway, and Zeno C. Ross, all of Fort Worth, for plaintiff in error.

Frank R. Graves, of Fort Worth, for defendants in error.

BROWN, Justice.

The parties are referred to. as appellant and appellee.

On March 1, 1930, Willing W. Ryan entered into a written contract with appellee R. T. Mayfield in which Ryan sold to Mayfield the property in controversy for a consideration of $4,250, of which sum $200 was paid in cash and the balance, "$4,050.00 to be evidenced by the execution and delivery by the said Ruel T. Mayfield of one contract of sales book in the form and kind customarily used by Willing W. Ryan in conveying houses and lots in said City of Fort Worth, Texas. Said contract of sales book to be executed and delivered upon the completion of the house to be erected by Willing W. Ryan according to the plans and specifications agreed upon and initialed by the said Willing W. Ryan and the said Ruel T. Mayfield, interest on said sales contract to begin with the completion of dwelling and occupancy by said Ruel T. Mayfield, said contract of sales book shall provide for monthly installments of Thirty-five Dollars ($35.00) or more, each, the first installment being due 30 days after date of said book," etc. The contract contained the obligation on Ryan's part to erect the said house on the lot, according to the plans and specifications, which were attached to the contract. We see no necessity in giving the entire preliminary sales contract, or the final sales contract, which was provided for therein.

On April 15, 1930, the final sales contract was executed by Willing W. Ryan, Inc., acting by and through its president, Willing W. Ryan, and Mayfield and wife. The consideration is recited to be $4,355; $500 cash, and $3,855 evidenced by a note, bearing interest from date until maturity at 8 per cent. per annum, etc.

This sales contract contained the following provisions: "When said purchaser shall have paid one-fourth of the total purchase price hereinabove provided for, together with interest on the deferred payments evidenced by the hereinabove mentioned note, said Seller and any other necessary party, will make, execute and deliver to said Purchaser a good and sufficient deed, with full covenants of general warranty, conveying a good and merchantable title to said purchaser free and clear of all encumbrances, save and except the following." The provisions that follow are, the retention in such deed of a vendor's lien to secure the unpaid purchase price, interest, attorneys' fees, the right to accelerate the maturity of unpaid installments, etc., when default is made, the assumption of payment of all taxes that accrue during the life of the contract, etc.

The contract further provides that on a failure on the part of Mayfield for 60 days to pay any installment of principal or interest, after same becomes due, "the contract shall, at the election of the seller, become null and void, whereupon all sums paid to said date hereunder shall be and become the property of said Seller for and as liquidated damages, provided that nothing herein contained shall be construed to deprive said seller of his right of action for specific performance in the event of the failure on the part of said purchaser of the obligations herein imposed upon him."

Mayfield and wife moved into the premises, when the house was completed, on April 8, 1930, made it their homestead, and have so occupied it ever since.

On the 17th day of April, 1930, without the knowledge or consent of the Mayfields, Willing W. Ryan, president of Willing W. Ryan, Inc., for such corporation, executed a warranty deed, thereby attempting to convey the fee-simple title to the premises to one F. C. Snebold, the consideration recited being $3,000, evidenced by a promissory note for such sum, due and payable on or before 30 days, with interest from maturity at the rate of 8 per cent. per annum. This deed was filed for record April 21, 1930.

On April 17, 1930, Snebold and wife executed and delivered to appellant, Investors Syndicate, their promissory note for $3,000, payable in installments monthly of $26.40 for 42 months, the first being due May 17, 1930, and the installments after the first 42 being at the rate of $31.80 per month, the first payment being November 17, 1933. The note recites that it is one of a series of two notes secured by a deed of trust executed by the maker to Southland Mortgage Company, trustee, conveying the property in controversy.

The deed of trust is in the usual long and comprehensive form; the beneficiary being Investors' Syndicate. The instrument contains a statement that the property conveyed is not the homestead of the makers and that "the notes" are executed in renewal and extension of the first $3,000 note executed in part payment for the land, and refers specifically to the deed to Snebold, and the lien retained therein, and subrogates the beneficiary to all rights under the deed.

On April 22, 1930, Snebold and wife re-conveyed, by warranty deed, the premises to Willing W. Ryan, Inc., subject to the encumbrance created theretofore by Snebold.

Mayfield made $35 monthly payments, as he contracted to do, regularly from May, 1930, until September, 1932, when he paid $30, and thereafter he paid $25 per month until March, 1933, when he paid $12.50; then for 4 months he paid $25 per month, and in August, 1933, he paid $15, in September and October, $25 each month, in December, $20, and in January, 1934, $25. Ryan, Inc., made all of the payments that were made on the Snebold note. Mayfield made none and had no knowledge of the fact that any payment made by him was applied to the Snebold note.

On May 16, 1930, Ryan, Inc., wrote Investors Syndicate inclosing fire and windstorm insurance policies covering the property, and gives the following explanation: "Before occupying this property, Mr. Snebold sold the same to Mr. R. T. Mayfield, an employee of the First National Bank of this City, and Mr. Snebold purchased a piece of property from us now under construction at 1036 East Mulkey Street." This was written in the face of the fact that Snebold had reconveyed to Ryan, Inc., and Mayfield had made his purchase before Snebold appeared on the scene.

On May 1, 1934, Investors Syndicate gave the trustee named in its deed of trust notice that F. C. Snebold and wife had defaulted, and requested the trustee to sell the property under the provisions of the deed of trust. Notices of the sale were made, and posted, May 3, 1934, and the premises were sold by the trustee on June 5, 1934; the purchaser being the beneficiary, Investors Syndicate.

Mayfield was not a party to any of these proceedings, but is shown to be a stranger thereto.

Appellant filed its suit in trespass to try title against appellee R. T. Mayfield on July 13, 1934, and went to trial on its amended petition, which was filed on April 29, 1935. The premises were sequestrated, and appellee replevied same.

Appellee made the formal answer required to the petition, set up his contract of purchase, his actual possession and open occupancy of the premises as his homestead at all times, and he attacks the conveyances and instruments made between his seller and Snebold as simulated and fraudulent, and those between Snebold and appellant as in fraud of his rights, and all as casting a cloud upon his title.

The cause was tried to the court and judgment rendered that appellant, plaintiff below, take nothing as against appellee.

Findings of fact and conclusions of law were made by the trial court, on appellants' request.

The trial court found all of the facts heretofore detailed as to the sale to and purchase by Mayfield; that Mayfield moved into the premises on April 8, 1930, with his wife, and that they have had open and notorious possession of the same ever since; that the $3,000 note executed by Snebold was no part of the purchase price owed by appellee, but was an indebtedness in excess of appellee's debt; that Snebold was used by Ryan, Inc., as a mere "dummy" for the purpose of acquiring the $3,000 vendor's lien note, for Ryan, Inc., to use in raising money; that, when the deed of trust and note were executed by Snebold to appellant, Mayfield and wife were occupying, using, and enjoying the premises as their homestead, and had no knowledge of the execution of the deed to Snebold, and did not know of, and were not parties to, the deed of trust in question; and that appellant and its agents had notice and knowledge of the occupancy of the premises by Mayfield and wife as a homestead at the time of the execution of the deed and vendor's lien, and the deed of trust.

The court further found that in January, 1934, the Investors Syndicate made demand on Mayfield for the payment of the debt due by Snebold, and informed Mayfield that Ryan, Inc., had made a conveyance to Snebold, who had created a debt in the sum of $3,000, secured by a lien on the premises, and that Snebold was in default in his payments.

The court further found that the transaction between Snebold and Ryan, Inc., was simulated and that no consideration passed between the parties.

The court further found that on April 9, 1935, long after this suit had been filed, Ryan, Inc., notified Mayfield that, by reason of Mayfield's default, it "declared the contract null and void."

Appellant's theory is that it has stepped into Ryan, Inc.'s, shoes. That Ryan, Inc., sold or mortgaged whatever title it had, when it made the warranty deed to Snebold, and took Snebold's note, and sold same to appellant, and that Snebold's deed of trust on the premises, given to secure the renewal note, executed to appellant, is such a lien

on the premises as that a sale thereunder, because of Snebold's default, carries with it the superior title, and that appellant can, in this proceeding, recover against appellee, leaving appellee only the right to redeem by paying appellant the balance appellee owes on the purchase price, under appellee's sales contract with Ryan, Inc.

The excuse given for the Snebold transaction is, that the contract with Mayfield was not such a merchantable transaction as that it could be financed through such a money lender as appellant; but, had Ryan, Inc., intended to enter into an open and honest transaction, there was no reason why it should not have conveyed the premises to Mayfield, retaining the vendor's lien, and transferring same to appellant, just as it did with Snebold.

To be perfectly plain, appellant asks this court to give a lawful construction to acts, deeds, and transactions which are shown to be reeking with fraud, and a construction which the very nature of the transactions discloses was foreign to the intent and purpose of the actors.

Ryan, Inc., made no effort to sell Snebold, by a bona fide transaction, that which it had, after contracting with Mayfield. Had it so done, it would have so stipulated in its contract, and it would have sold its contract theretofore made with Mayfield. Neither has Ryan, Inc., shown any intent or purpose to see that appellant received what it actually had, for the reasons given.

On the other hand, after making a plain, bona fide, executory sales contract with Mayfield, and while Mayfield was in actual, open, and notorious possession and occupancy of the premises, and even before Mayfield's first monthly payment was due, Ryan, Inc., in derogation of Mayfield's rights and without his knowledge, undertook to sell, by warranty deed, the entire fee-simple title to the premises, and to burden that title with an additional debt of $3,000, to which Mayfield was a stranger.

■ Under the situation found here, this is neither the time nor place for any court to apply the rule that the lesser estate is conveyed by and comprehended in an instrument which purports to convey the larger.

Mayfield was not in arrears, had made no default, under his contract, when these fraudulent transactions took place, and no authority holding that the vendor, in an executory contract of purchase and sale, can, when default is made by the buyer, sell to another, could possibly apply. Such a

holding would be monstrous and shocks the conscience by its very contemplation.

■ Mayfield and wife being in possession, as found by the trial court, and by us, at all times, it was the duty of appellant to inquire into their right of possession. We need not burden this opinion with citation of authorities covering such a duty. The simplest inquiry would have disclosed, immediately, the fraud and deceit practiced by Ryan, Inc., and Snebold, and there would have been no renewal note—no deed of trust, and no money paid by appellant.

■ The deed of trust is a nullity, and the sale, under its terms, conveyed no title.

Let it be remembered that Ryan, Inc., still holds Mayfield's note and contract, and has made no effort to convey the same to appellant. Realizing that it was playing a game with Mayfield in which Mayfield was confronted with "Heads I win and tails you lose," just a few days before this cause was tried, and after it had been set for trial, Ryan, Inc., notified Mayfield that it declared his contract null and void because he had defaulted in his payments. An idle gesture made at the eleventh hour! The record discloses, and we find same as a fact established, that Mayfield made no default until demand was made upon him to pay the Snebold debt—not his debt. Some of his monthly payments had been smaller than he had contracted to pay, but this was done with the consent of the seller and during "the depression"; so the testimony shows. What man among us would have continued to pay after his vendor attempted to destroy his title and had burdened it with a debt he had neither made nor assumed? Mayfield did the wise and prudent thing when he had the "bomb shell exploded under him" by appellant in January, 1934.

Let us distinguish a few of the cases relied upon by appellant: Clark v. Altizer (Tex.Civ.App.) 145 S.W. 1041, simply holds that any property that may be sold may be mortgaged. Gaither v. Gaither (Tex.Com. App.) 25 S.W.(2d) 299, holds that, if the vendee is in default, under an executory contract for sale of land, in entire performance of his obligation, the vendor may recover the land. Stone Land & Cattle Co. v. Boon, 73 Tex. 548, 11 S.W. 544, holds that a vendor who has retained an express lien in his contract, to secure the unpaid purchase money, may, upon default of the vendee, sue for the land, or for the purchase money, with foreclosure.

All of the cases cited by appellant contemplate affirmative action by the vendor,

after his vendee had defaulted in his payments.

This vendor, Ryan, Inc., who holds to Mayfield's contract and debt, has taken no affirmative action, and we hold that the juggling of the title between it and Snebold and the appellant does not serve to put appellant "in Ryan, Inc.'s shoes," in this case, so as to give it the right to recover the title as against appellee Mayfield, in a trespass to try title suit.

No such case, as is the one at bar, has ever been before any appellate court in Texas, so far as we can find. Evidently no such undertaking was ever had heretofore. We are unable to classify it, but we do not hesitate to denounce it because of its manifest intent and purpose.

Quite naturally we sympathize with the lender of the funds, but cannot give it an advantage which cannot be had without a technical and strained construction of the transactions on which it relies.

The judgment of the trial court is affirmed.