COLLETT et al. v. HOUSTON & T. C. R. CO. et al. (No. 940.)*

(Court of Civil Appeals of Texas. Amarillo. April 5, 1916. Rehearing Denied May 17, 1916.)

1. FRAUDULENT CONVEYANCES ☞58 — CONVEYANCE SUBJECT TO VENDOR'S LIEN—VALIDITY—STATUTE.

A voluntary conveyance of community property by husband to wife, the deed expressly providing that the conveyance should not become absolute until satisfaction of a vendor's lien, was not void as to the holder of the vendor's lien note, under Rev. St. 1911, art. 3967, providing that every conveyance made by a debtor, not upon valuable consideration, shall be void as to prior creditors, unless the debtor was possessed of property sufficient to pay his existing debts, etc., though at the time of conveyance the husband's indebtedness on the property was $1,760 and the value of his property but $1,690.

[Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. §§ 138, 140, 144–147, 158; Dec. Dig. ☞58.]

**2. FRAUDULENT CONVEYANCES** ☜169—VOLUNTARY CONVEYANCE—NOTICE.

The donee in a voluntary conveyance cannot sustain it by showing he had no notice of the donor's debts.

[Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. §§ 494, 520; Dec. Dig. ☜169.]

**3. FRAUDULENT CONVEYANCES** ☜74(3)—VOLUNTARY CONVEYANCE — SUBSEQUENT CREDITORS.

A voluntary conveyance is void as to existing creditors, but not as to subsequent creditors, merely on the ground that it is voluntary.

[Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. §§ 188, 189; Dec. Dig. ☜74(3).]

**4. FRAUDULENT CONVEYANCES** ☜58—VOLUNTARY CONVEYANCE—SOLVENCY OF GRANTOR.

A voluntary conveyance, leaving the grantor sufficient other property to pay his debts, is not void as to prior creditors.

[Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. §§ 138, 140, 144–147, 158; Dec. Dig. ☜58.]

**5. FRAUDULENT CONVEYANCES** ☜272 — BURDEN OF PROOF—VOLUNTARY CONVEYANCE.

A voluntary conveyance is prima facie void as to existing creditors; the burden of proof resting on the donee to establish the circumstance that the donor had ample means to meet his liabilities.

[Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. § 804; Dec. Dig. ☜272.]

**6. FRAUDULENT CONVEYANCES** ☜297 — REBUTTAL OF FRAUDULENT PURPOSE—STATUTE.

Rev. St. 1911, art. 3967, touching voluntary conveyances, permits the rebuttal of a prima facie fraudulent purpose by evidence that the grantor was possessed of property within the state subject to execution sufficient to pay his existing debts.

[Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. § 891; Dec. Dig. ☜297.]

**7. FRAUDULENT CONVEYANCES** ☜174(1) — VOLUNTARY CONVEYANCE—PAYMENT OF VENDOR'S LIEN—EFFECT.

Where the voluntary grantee of land, expressly subjected by the deed to a vendor's lien against the property, paid the note secured by the lien, or such note was paid by another, such grantee became vested with the fee-simple title.

[Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. §§ 530, 542; Dec. Dig. ☜174(1).]

**8. HUSBAND AND WIFE** ☜266 — COMMUNITY PROPERTY—TRANSFER TO WIFE—EVIDENCE.

The interest of either party, husband or wife, in community property, may be conveyed or donated to the other, subject to certain limitations, and the execution and delivery of a deed by the husband to the wife is sufficient evidence of the transfer of the property to the wife's separate estate.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 925–928; Dec. Dig. ☜266.]

**9. VENDOR AND PURCHASER** ☜279—VENDOR'S LIEN—FORECLOSURE—PARTY.

Where a husband conveyed community property to his wife, expressly subjecting it to an existing vendor's lien, it was unnecessary to make the wife a party to proceedings to foreclose the lien.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 778–782; Dec. Dig. ☜279.]

**10. VENDOR AND PURCHASER** ☜265(1), 289—VENDOR'S LIEN — FORECLOSURE — ESTOPPEL OF GRANTEE.

Where a husband conveys community property to his wife, expressly reserving the vendor's lien in the seller, the wife though not made a party to a proceeding to foreclose the lien, is not estopped from tendering the purchase money, or from filing a bill in equity to redeem.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 700, 701, 820, 821; Dec. Dig. ☜265(1), 289.]

**11. JUDGMENT** ☜682(1)—VENDOR AND PURCHASER ☜289—VENDOR'S LIEN — FORECLOSURE—BINDING FORCE.

In suit to foreclose a vendor's lien on land purchased by the community, the judgment did not bar the wife, who was not a party, the husband having voluntarily conveyed to her subject to the lien; and the sale and purchase did not preclude the wife from redeeming the land, the equities otherwise giving her the right.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 1203; Dec. Dig. ☜682(1); Vendor and Purchaser, Cent. Dig. §§ 820, 821; Dec. Dig. ☜289.]

**12. APPEAL AND ERROR** ☜934(2)—FINDING—PRESUMPTION.

Where a case is submitted upon special issues, if the facts will warrant a conclusion necessary to the judgment, the Court of Civil Appeals must presume the trial court so found in support thereof.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3777; Dec. Dig. ☜934(2).]

**13. VENDOR AND PURCHASER** ☜289 — VENDOR'S LIEN—SUIT TO FORECLOSE—RIGHT OF REDEMPTION.

Where the vendor of land to the community sued the husband and another to foreclose his vendor's lien, such suit did not preclude the vendor's rescinding the sale as to the wife's right to redeem the land; the husband having conveyed to her subject to the lien.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 820, 821; Dec. Dig. ☜289.]

**14. VENDOR AND PURCHASER** ☜102—RESCISSION OF CONTRACT — SUFFICIENCY OF EVIDENCE.

The facts that a vendor of land, after the buyers announced their inability to pay therefor, bought in the property at foreclosure of lien sale, and went into possession by tenant, to whom he later sold the surface, reserving mineral rights, authorized a finding that such vendor rescinded the contract of sale when he leased the land.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 175–177; Dec. Dig. ☜102.]

**15. VENDOR AND PURCHASER** ☜265(1)—RESCISSION OF CONTRACT—NOTICE.

Where land was sold to the community, and the husband made a voluntary conveyance to the wife, expressly subject to the vendor's lien, though the vendor gave the wife no actual notice of his purpose to rescind the contract of sale, she could base no equity thereon, where the vendor went into possession by tenant, having bought it on foreclosure of his lien, the wife having left the county, gone to reside in a distant part of the state, and not having offered to pay taxes, since actual possession under a claim of ownership, exercising the rights of an owner in the land, is ordinarily notice to the world of the rights asserted by the occupant.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 700, 701; Dec. Dig. ☜265(1).]

---

☜For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**16. VENDOR AND PURCHASER ⬥⟳289 — RIGHT OF SUBGRANTEE—OFFER TO REDEEM—SUFFICIENCY OF EVIDENCE.**

In a suit to recover land, evidence *held* to justify finding that plaintiff wife, to whom her husband, after the community purchased the land, voluntarily conveyed, subject to the vendor's lien, did not offer within a reasonable time to redeem after foreclosure of lien.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 820, 821; Dec. Dig. ⬥⟳289.]

**17. VENDOR AND PURCHASER ⬥⟳289 — SUBGRANTEE'S RIGHT TO REDEEM — BURDEN OF PROOF.**

In an action to recover land by a wife, to whom her husband voluntarily conveyed subject to the vendor's lien, where plaintiff specifically pleaded her title and rights, the burden was on her to allege and prove all the necessary facts to establish them, among which was that a rescission had not been declared by the vendor, or that she had no notice, or that the time in which she offered to redeem was not unreasonable, or delay excusable.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 820, 821; Dec. Dig. ⬥⟳289.]

**18. VENDOR AND PURCHASER ⬥⟳101—RESCISSION—NOTICE.**

Ordinarily, when time is not made the essence of the contract for the sale of realty, notice must be given of an intention to rescind for nonpayment, as where the vendee is in possession and has paid part of the consideration.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 170–174; Dec. Dig. ⬥⟳101.]

**19. VENDOR AND PURCHASER ⬥⟳265(1)—WAIVER OF RIGHT TO RESCIND—EFFECT.**

While the vendor's bringing suit against the husband to foreclose his vendor's lien on land purchased by the community waived rescission on an antecedent failure of the husband to pay the vendor's lien note, it did not relieve the wife, to whom the husband voluntarily conveyed, subject to the vendor's lien, of her obligation thereafter to perform in reasonable time.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 700, 701; Dec. Dig. ⬥⟳265(1).]

**20. VENDOR AND PURCHASER ⬥⟳265(1)—FORECLOSURE OF LIEN—REDEMPTION—LACHES.**

Where a wife, to whom her husband made voluntary conveyance of land purchased by the community, did not offer to perform until more than 15 years after the vendor purchased at execution sale after foreclosure of his lien, and until nearly 14 years after he placed a tenant on the land, who fenced and used it, and in whose possession it remained, the vendor having sold the surface to him, the wife could not recover the land because of laches.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 700, 701; Dec. Dig. ⬥⟳265(1).]

**21. VENDOR AND PURCHASER ⬥⟳289—RESCISSION—NOTICE—REDEMPTION OFFER—SUFFICIENCY OF EVIDENCE.**

In an action to recover land by a wife, to whom her husband, after its purchase by the community, made voluntary conveyance subject to the vendor's lien, evidence *held* sufficient to warrant finding that the vendor rescinded as to the wife, that she had notice of his purpose, or knowledge of such facts as would put her upon notice, and that, in offering to redeem or per-

form, she delayed an unreasonable length of time.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 820, 821; Dec. Dig. ⬥⟳289.]

**22. ESTOPPEL ⬥⟳27(1)—ESTOPPEL BY DEED.**

Where a deed to land was duly recorded and in the chain of title when a company concluded its contract to buy such land and accepted conveyance, the grantor in the deed, which was procured by fraud, was estopped from recovering her interest in the land from the company.

[Ed. Note.—For other cases, see Estoppel, Cent. Dig. §§ 63–66; Dec. Dig. ⬥⟳27(1).]

Appeal from District Court, Wilbarger County; J. A. Nabers, Judge.

Suit by Mrs. L. A. Collett and husband against the Houston & Texas Central Railroad Company, the Corsicana Petroleum Company, and others. From judgments for the Railway Company and the Petroleum Company, plaintiffs appeal. Affirmed.

McLean, Scott & McLean, Mike E. Smith, and L. M. Levy, all of Ft. Worth, and Bonner & Storey, J. S. Cook, and Harry Mason, all of Vernon, for appellants. Baker, Botts, Parker & Garwood and Parker & Kennerly, all of Houston, Berry, Stokes & Morgan, of Vernon, Carrigan, Montgomery & Britain, of Wichita Falls, Geo. C. Greer, of Dallas, and W. H. Francis, of Ft. Worth, for appellees.

HUFF, C. J. Mrs. L. A. Collett, joined by her husband, W. B. Collett, brought suit against the Houston & Texas Central Railway Company, the Corsicana Petroleum Company, a corporation, H. Fleischauer, the Farmers' Loan & Trust Company, a corporation, the Central Trust Company, a corporation, the Southern Pacific Company, a corporation, Dudley Olcott, 2d, and James N. Wallace, to recover from all the defendants the title and possession of an undivided one-half of the oil, coal, or other minerals within and underlying section No. 15, in block No. 13, of the Houston & Texas Central Railway Company's survey of land situated in Wilbarger county, Tex., with the rights to prospect for, explore, drill, mine, and take out, remove, and dispose of the same, and all the rights of ingress and egress and all easements necessary to that end, and tendering to pay certain purchase-money notes against said section of land, all costs, taxes, expenses, and charges legitimately due defendants, or either of them, by the appellants, by reason of the notes on the land, and to recover the oil taken from the land and disposed of by the defendants, or either of them, or, in the alternative, if not entitled to recover of the Corsicana Petroleum Company, to recover of all other defendants one-half of the value of the oil and mineral rights conveyed by them, or either of them, and also to cancel a deed made by Mrs. Collett and her husband to H. Fleischauer, agent of the defendant the Houston & Texas Central Railroad Com-

pany, dated February 17, 1913, upon the ground of fraud and deceit. In the appellants' petition, the title of Mrs. Collett in and to an undivided half interest in the section mentioned, was specifically set out and pleaded.

The Houston & Texas Central Railroad Company and the Corsicana Petroleum Company answered by separate answers, setting up quite a number of exceptions to the petition, as well as a denial of the several allegations made by Mrs. Collett, specifically setting up the statute of limitations of three, four, five, and ten years, and an abandonment on the part of Mrs. Collett, and alleged rescission on the part of Olcott, etc., which will be unnecessary, as we view the matter at this time, to set out specifically.

The land in question was granted to the Houston & Texas Railway Company by the state of Texas, and thereafter patented to the Houston & Texas Railway Company May 7, 1889. The Houston & Texas Railway Company executed deeds of trust to Sheppard and House, trustees, upon this property, together with other lands and property, to secure a bonded indebtedness of the railway company, on May 7, 1877. Thereafter, on the 26th day of May, 1886, the United States Circuit Court for the Eastern District of Texas, sitting at Galveston, in a suit by the trustees and others, appointed Charles Dillingham and others receivers of the Houston & Texas Railway Company, and its lands; and on the 7th day of December, 1886, the two receivers were removed, continuing Charles Dillingham as sole receiver. On March 26, 1888, the United States Court for the Eastern District of Texas foreclosed the mortgages on all the property of the railway company. The decree entered was in what is known as consolidated cause No. 196, foreclosing the mortgage and ordering Charles Dillingham, as special master commissioner, to sell the lands embraced in the decree, including the section of land involved in this suit. Dillingham, by his report dated September 26, 1888, shows that in accordance with the decree he sold the land in controversy and other property to F. P. Olcott, for $10,835,000. On December 4, 1888, the Circuit Court of the United States in that cause confirmed the sale, as reported by Charles Dillingham as special master commissioner, to F. P. Olcott. Charles Dillingham, as special master commissioner, on the 18th day of January, 1889, in conformity with the order of the court, executed a deed to F. P. Olcott, conveying certain railroads and railroad property, and the land in question, together with other land. It is shown that on August 1, 1889, F. P. Olcott and others organized a new railroad company, and secured a charter therefor, under the name of the Houston & Texas Central Railroad Company, the charter reciting that Olcott had previously become the owner of the railroads formerly owned by the Houston & Texas Central Railway Company, and that it was the purpose of the new corporation to acquire, maintain, and operate the railroads theretofore forming a part of the railroads of the Houston & Texas Central Railway Company. This charter was signed by Olcott and others July 24, 1889, and was approved by the Attorney General, J. S. Hogg, and filed in the department of state August 1, 1889.

It appears that on April 1, 1890, by a certain trust indenture between F. P. Olcott, the Farmers' Loan & Trust Company, and the Southern Pacific Company, Olcott mortgaged all the lands he had acquired by the sale and deed of Charles Dillingham, special master commissioner, to secure the payment of $5,086,000 of bonds, executed and to be executed by the Houston & Texas Central Railroad Company. The mortgage is styled a trust indenture and included the section of land here in controversy. This instrument, after naming the parties thereto, Olcott, Farmers' Loan & Trust Company, and the Southern Pacific Company, recites substantially that Olcott purchased on September 8, 1888, at foreclosure sale of the Houston & Texas Central Railway Company, and recites the fact that Olcott had thereafter caused a corporation to be organized, under the name of Houston & Texas Central Railroad Company, and had by deed of even date with said trust deed indenture conveyed to it the railways, not including the lands, and that the Houston & Texas Central Railroad had executed and delivered, or was about to make, execute, and deliver, consolidated mortgage bonds, describing them, and giving the form of the bonds and the interest warrants annexed thereto, and the trustee's certificate to be indorsed thereon. It recited further the execution and delivery by the Houston & Texas Central Railway Company to the Farmers' Loan & Trust Company of its consolidated mortgage or deed of trust, covering the property conveyed to the railroad company by Olcott, and after so reciting the trust indenture conveyed in trust to the Farmers' Loan & Trust Company, "for the purpose of further securing the payment of said bonds, with interest to accrue thereon," all the lands acquired by Olcott at the foreclosure sale conveyed by the mortgage of the former existing railway company, known as its "main line and western divisions consolidated mortgage," being the mortgage of the last-mentioned company to the Farmers' Loan & Trust Company, trustee, dated October 1, 1872, and other lands upon certain trust conditions, covenants, and agreements contained in certain paragraphs.

Generally, it may be stated that it was provided in this indenture that, until the Houston & Texas Central Railway Company should make default in the payment of the principal and interest of the bonds, Olcott should be permitted to possess and enjoy the lands and to collect and receive the income,

earnings, and profits thereof, but should apply the same in the first instance to the payment of taxes, the protection of the title, and general expenses incident to ownership and sale,. turning over any surplus of the proceeds of the lands as provided in the instrument. It is provided in the indenture that the Houston & Texas Central Railroad Company, and its successors and assigns, might from time to time sell or contract for the sale of the lands covered by the trust indenture, provided that such sales or contracts should be approved by the Southern Pacific Company as fair and just, and the fact of such approval certified to the trustee, the Farmers' Loan & Trust Company, upon the happening of which Olcott, his heirs, executors, or assigns, should convey the land sold to such purchaser or purchasers, and that the trustee should release the same from the lien of said trust indenture. There is a clause providing for the application of the money received from such sales to the payment of the bonds, with interest thereon, after paying certain expenses. There is a clause in this indenture that Olcott, "his heirs, executors, and assigns, is and are to be at all times at liberty to sell and dispose of, at his or their discretion, all right, title, and interest which he or they, or any of them, may have in, to, or in respect to the property or premises hereby conveyed to the party of the second part, in trust, as aforesaid."

Mrs. Collett derives her claim of title through an order of the United States court empowering Charles Dillingham, as sole receiver, to make sales of and deeds for the land in his possession heretofore sold to the purchasers, Olcott and Downs, with directions, however, to report all such sales, before deeds are given, to · Olcott, of the lands bought by him. On the 15th day of August, 1889, Charles Dillingham conveyed the land in question, as receiver, to L. O. Davis and F. M. Leonard, for a consideration of $2,880 paid and secured to be paid by Davis and Leonard, $576 acknowledged to have been paid in cash, and the remainder evidenced by four obligations of L. O. Davis and F. M. Leonard, in the deed, for the sum of $576 each, drawn to the order of Charles Dillingham, receiver, and due in one, two, three, and four years from date, to bear interest, payable annually, at the rate of 6 per cent. per annum from date until paid; the deed reciting that the obligations are secured by deed of trust on the land so conveyed of even date therewith, executed by L. O. Davis and F. M. Leonard to James A. Baker, Jr., as trustee, for the use and benefit of the legal holder of said obligations. Mrs. Collett, the appellant, was at this time the wife of L. O. Davis, who afterwards died, and she married W. B. Collett. This deed was duly filed for record October 17, 1889, in Wilbarger county. The deed of trust by L. O. Davis and F. M. Leonard to James A. Baker, Jr., trustee,

on section 15, block 13, called for in the deed, was in evidence, and shows to have been given to secure the payment of the note; the terms of the deed not being at this time necessary to set out specifically. On the deed from the receiver to L. O. Davis and F. M. Leonard the following is indorsed:

"I hereby approve of the sale to L. O. Davis and F. M. Leonard of the land set forth in the foregoing deed, and consent to the delivery of the deed to the purchasers upon their complying with the terms of sale as set forth in the deed. Witness my hand this the 21st day of August, 1890. [Signed] F. P. Olcott."

The deed was duly acknowledged and recorded December 4, 1893. On the 31st day of January, 1893, L. O. Davis executed his warranty deed to L. A. Davis, now Mrs. Collett, who was then the wife of L. O. Davis, to an undivided half interest in section 15, block 13, the land in question, retaining a vendor's lien to secure the notes due the Houston & Texas Railroad Company. This deed was filed for record February 4, 1893.

On the 1st day of November, 1898, Frederick P. Olcott recovered judgment against L. O. Davis and F. M. Leonard and M. B. Leonard on the notes above mentioned. The judgment recites a recovery of $2,682.20, being the principal, interest, and attorney's fees of the note sued on, against L. O. Davis and F. M. Leonard; and for that sum of money a decree was awarded against the parties named in favor of Olcott, and foreclosed the lien as to all parties, F. M. Leonard, L. O. Davis, and M. B. Leonard, wife of F. M. Leonard, against the land in question, and as retained in the deed of trust from Davis and Leonard to Baker, Jr., directing the issuance of an order of sale. On this judgment an order of sale was duly issued to Wilbarger county and placed in the hands of the sheriff thereof, who, on the 12th day of May, 1899, advertised the same, and on the 6th day of June, 1899, sold the same at public outcry to Frederick P. Olcott for the sum of $1,300. This deed was dated the 6th day of June, 1899, and was filed for record July 10, 1899.

On August 15, 1900, Frederick P. Olcott entered into an agreement of lease of the section in question, with D. Waggoner & Son, and also leased in the same form for the years 1901 and 1902. A deed from the Houston & Texas Railroad Company, approved by the Southern Pacific Company, to W. T. Waggoner, dated August 1, 1903, and filed for record November 24, 1903, to the surface of section 15, block 13, and also deeds and release to W. T. Waggoner from W. P. Olcott and the Farmers' Loan & Trust Company, of the same date, and recorded the same time. There is a deed signed by Mrs. Collett and her husband, M. B. Collett, dated February 17, 1913, conveying the land in question for a recited consideration of $600, to Fleischauer; and Fleischauer, on the 22d day of February, 1913, conveyed the land to James M. Wallace and Dudley Olcott, 2d. The Corsicana Petroleum Company shows a regular chain of

transfers from the Houston & Texas Central Railway Company, to itself. There is a conveyance in the record which shows that the title passed from Frederick P. Olcott to James M. Wallace and Dudley Olcott, 2d, before his death; it appearing that he was dead at the time of the trial. It will not be necessary to set out the title specifically of the Corsicana Petroleum Company, but it is sufficient to say that if the deed from Mrs. Collett to Fleischauer was not fraudulent, or if she is defeated upon some other grounds alleged and shown, it had all the title that she, or L. O. Davis, or Leonard, or the railroad company, or Olcott, or any of the parties named in the deeds of trust and various interests had in and to the oils and minerals under the land.

We do not regard it as necessary to set out specifically the terms of the various deeds of trust and indenture. We are inclined to think that the legal title is shown to have vested in Olcott under the foreclosure proceedings in the United States court, above set out, subject to the trusts and conditions in the various instruments executed by him and the railroad company and receivers. The power of Dillingham, as a receiver, may not have authorized the execution of the deed of L. O. Davis and Lockhart, at the time he executed it; but it appears that Olcott, the railroad, and various companies, by their acts and conduct, and approval, indorsed on the instruments, have ratified whatever Dillingham did as receiver, and that it was sufficient to pass the title to Davis and Lockhart, subject to the payment of the purchase money, as provided for in the deed of trust executed by them to Baker, as trustee. We have given the above outline of the record title, which in fact was pleaded by the parties in their various pleadings. The other facts and certain clauses in the deeds of the various parties will be noticed as we discuss the issues presented in this case, and will not at this time be set out further.

The case was submitted to the jury on special issues by the trial court, and certain issues requested by the respective parties. The jury, in answer to the issues propounded by the court and by appellant, found that Fleischauer made false and fraudulent representations to Mrs. Collett and her agents in order to procure the deed, and that she was induced by such representations to make the deed, and but for which she would not have executed the deed. They find at the time of making such representations that he was the agent of the Houston & Texas Central Railroad Company, and was not the agent of Olcott and Wallace, the assignees of Frederick P. Olcott. They also find substantially that the Corsicana Petroleum Company had notice of the circumstances under which and by means of which Fleischauer procured the deed from Mrs. Collett. They found that Mrs. Collett did not intend to abandon her right to redeem the land or her rights in the land. They answered the following questions and answers:

"(8) At the time said L. O. Davis made the said deed to his wife, what was the value of his property as shown by the evidence? Answer: $1,690.00.

"(9) At the time said L. O. Davis made said deed to his wife, what was the amount of his indebtedness? Answer: $1,760.00.

"(10) Was there any consideration for the deed made by L. O. Davis to his wife? If so, what was it? Answer: None."

The following were the issues submitted by the court at the request of the defendant Houston & Texas Central Railroad Company?

"(1) Did W. T. Waggoner take possession of the land in controversy—that is, section No. 15, in block No. 13, of the Houston & Texas Central Railroad Company surveys of lands in Wilbarger county, Texas, as tenant, under the written leases introduced in evidence? Answer: Yes.

"(2) When, if at all, did W. T. Waggoner take possession of said land under the written leases introduced in evidence, or any of them? Answer: August 15, 1900.

"(3) Did W. T. Waggoner hold continuous possession of said land as tenant under the written leases introduced in evidence, or any of them, until said Waggoner received deed to said land? Answer: He did.

"(4) When did said Waggoner receive the deed in question to section 15, if he received such deed, from F. P. Olcott? Answer: November 10, 1903."

"(27) Did L. O. Davis, by the execution and delivery to his wife, Mrs. L. A. Davis, now Mrs. L. A. Collett, of the deed to the land in controversy, dated January 31, 1893, intend to give said land to said Mrs. L. A. Davis? Answer: Yes.

"(28) Did the said L. O. Davis, at the time he delivered the said deed to the said L. A. Davis, now Mrs. L. A. Collett, have property, including section 15, block 13, estimating the same at its fair and reasonable market value, sufficient to pay his then existing debts? Answer: No.

"(29) Did L. O. Davis, by the execution and delivery of said deed of date January 31, 1893, to Mrs. L. A. Davis, now Mrs. L. A. Collett, intend thereby to hinder, delay, or defraud his creditors? Answer: No."

The jury, in answer to the questions, also found that the Corsicana Company paid to the Houston & Texas Railway Company, which it received, $76,000, for the minerals under the land, and that an undivided half interest at that time was worth $38,000, and further answered other questions with reference to the value of the mineral products under the land at various times, and also answered as to the amount of products taken from the land and the net value of them.

There appear to have been no answers filed by any of the defendants except the railroad company and the petroleum company. All parties made motions in the trial court to have the court render a judgment upon the findings of the jury in their behalf. The court granted the motions of the railway company and the petroleum company, and rendered judgments for them, and that Mrs. Collett take nothing by her suit. From this action of the court the appeal is prosecuted.

In the motions of the Houston & Texas Central Railroad Company and the Corsicana

Petroleum Company for judgment on the findings of the jury, the ground therefor in part is that the findings of the jury establish that the conveyance from L. O. Davis to his wife, L. A. Davis, now Mrs. Collett, and appellant herein, was a voluntary conveyance, and under the statutes of this state void as to Olcott, who was a prior creditor. It will be noted by the verdict of the jury they find there was no consideration paid by Mrs. Davis for the land; that the indebtedness thereon, at the time of the conveyance, was $1,760, and the value of his property $1,690. They also found that Davis at that time did not have property, estimating it at a fair and reasonable value, including section 15, block 13, sufficient to pay his existing debts. It is made certain that the $1,760 is the balance due on the notes afterwards reduced to judgment by Olcott, upon which the lien was foreclosed on the land in question. The deed from Davis to his wife is a general warranty, reciting a consideration of $1,000, and after the warranty clause the deed concludes:

"But it is expressly agreed and contemplated that the vendor's lien is retained against the above-described property and improvements until the notes due the Houston & Texas Central Railroad Company, and all interests thereon are fully paid, according to the face and tenor, effect and reading, when this deed shall become absolute."

[1] The question under the findings of the jury and this recital in the deed is: Was this conveyance void as to the owner and holder of the balance due on the vendor's lien note? Our statute on voluntary conveyance is as follows:

Article 3967, Revised Civil Statutes 1911: "Every gift, conveyance, assignment, transfer or charge made by a debtor, which is not upon consideration deemed valuable in law, shall be void as to prior creditors, unless it appears that such debtor was then possessed of property within this state subject to execution sufficient to pay his existing debts; but such gift, conveyance, assignment, transfer or charge shall not on that account merely be void as to subsequent creditors, and though it be decreed to be void as to a prior creditor, because voluntary, it shall not for that cause be decreed to be void as to subsequent creditors or purchasers."

At the revision of the Civil Statutes in 1879, the act of 1840 constituted the legislation on fraudulent conveyances in this state. The codifiers of the statute of 1879, in their report, suggest that sections 2 and 3 of the act of 1840 (Acts 1840, p. 28) were objectionable, and, after examining the statutes of several states, put the statutes of fraud in a new form,

"using the forms of expression adopted by the Virginia Code, wherever we depart from the wording of our own statute, retaining the law as it was in substance and meaning. We call attention, however, to one change which does not appear in any statute we have examined, but which is held to be the law by the courts: In article 2466 (article 3967, Revised Civil Statutes 1911), after the word 'creditor,' in the third line, we have inserted the words, 'unless it appears that such debtor was then possessed of property within this state subject to execution sufficient to pay his existing debts.'" Batts' Annotated Civil Statutes, vol. 2, p. 161.

The leading case on this question appears to be Maddox v. Summerlin, 92 Tex. 483, 49 S. W. 1033, 50 S. W. 567. The Supreme Court there said:

"As to pre-existing debts, the gift was, by the statute, prima facie void, and the property subject to the payment of such debts of Summerlin, unless the donee should make it appear that he was, at the time the gift was made, 'possessed of property within this state subject to execution sufficient to pay his existing debts.' The terms of the statute are so plain that it is not necessary to add argument to enforce it."

The holding in that case is, as we understand it, simply that a gift is prima facie void as to existing creditors. While the statute is quoted as to the sufficiency of other property subject to execution, we do not think it necessarily follows that the prima facie presumption may not be rebutted by some other fact. The statute, according to this opinion, does not make the gift absolutely void, but it is only prima facie evidence of the fact.

In the case of Parks v. Worthington, 101 Tex. 505, 109 S. W. 909, we do not understand the opinion of the Supreme Court to be that the gift, in that case to the wife, was void on account of the mortgage debt for $400. At the time of making the conveyance the husband was indebted to Parks in the sum of $108, unsecured, and $400 to Mrs. Carruth, secured by a mortgage on the property conveyed. Before the conveyance to the wife was filed for record, Parks sued out an attachment on the $108 debt due him by the husband, Worthington, and levied on the land. The Supreme Court affirmed the holding of the Court of Civil Appeals (104 S. W. 921). In doing so, however, the court said:

"We do not agree with all of the views expressed in the opinion of the court upon the law of the case. For instance, We do not think it is true that it was necessary that Mrs. Worthington should have been made a party to the attachment proceeding in order to entitle Parker to subject the property to an attachment lien, and to 'assert against her the superiority of such lien to her unrecorded conveyance, or attack such conveyance on the ground that it was without consideration and void as against creditors. To put himself in a position to do this it was only necessary for him to show that he was such creditor as he claimed to be."

The same observation is not directed to Mrs. Carruth's secured debt; however, the court, upon consideration of the facts in that case, concluded the conveyance was not voluntary, but upon a valuable consideration. We do not believe this case holds that a conveyance is void as to a debtor whose claim is provided for in the conveyance.

Shannon v. Buttery, 140 S. W. 858, upon a casual reading, may appear to support the contention made in this case. However, we think that case is distinguishable from this, in that the deed of conveyance did not mention the vendor's lien note and Mr. Justice Jenkins, in that case, was careful to note that fact. As we understand that case, it only holds, as to the attorney's fees, which were not mentioned in the deed to the husband of Mrs. Shannon, that the statute as to

the fee was applicable. It is stated in the opinion, if she had been a purchaser for value without actual notice of the attorney's fees, foreclosure could not have been had as against her and the land for them; but as she was a donee it made no difference whether she had notice or not of such fees. We think the court properly foreclosed the vendor's lien against the wife, as to the principal and interest of the note, whether the conveyance was voluntary or upon a consideration. When correctly understood, we do not believe it was there held that the deed was void on the ground of prior vendor's lien creditor.

Van Bibber v. Mathis, 52 Tex. 406, arose upon a state of facts prior to the revision of 1879, and announced the rule which the courts had established, and which the codifiers wrote into the present article.

[2-5] Dixon v. Sanderson, 72 Tex. 359, 10 S. W. 535, 13 Am. St. Rep. 801, Bank v. Foster, 74 Tex. 514, 12 S. W. 223, and Clark v. Bell, 40 Tex. Civ. App. 39, 89 S. W. 38, announce the general rule to be that the donee in a voluntary conveyance cannot sustain the conveyance by showing he had not notice of the debts of the donor. The question of notice, of course, is not involved where there is no consideration paid, as is required in the preceding article (3966). The conveyance is void only as to prior creditors, but not as to others or to subsequent creditors, merely on the ground that it is voluntary. Higgins v. Johnson, 20 Tex. 389, 70 Am. Dec. 394. If the grantor has sufficient other property remaining, it is not void as to prior creditors. It occurs to us that, if from the face of the instrument it is shown that the title to the property is not to vest until the debt is paid, it does not show a conveyance of the property, placing it, or attempting to do so, beyond the reach of the creditors named. The donee's title fails only in so far as it stands in the way of the creditors, and, as we understand the holdings of the courts, a debtor may transfer land subject to the lien of a creditor, which would not be held to be in fraud of the lien debt so secured or provided for. Pearson v. Hudson, 52 Tex. 352; Folts v. Ferguson, 77 Tex. 301, 13 S. W. 1037; Miller v. Koertge, 70 Tex. 162, 7 S. W. 691, 8 Am. St. Rep. 587; Kearby v. Hopkins, 14 Tex. Civ. App. 166, 36 S. W. 506. The above authorities, cited from this state, are presented in this court by the parties to this appeal, and while perhaps they are not decisive of the question here at issue either way, yet we believe they indicate that a voluntary conveyance is not void as to prior creditors when it is shown the deed would not operate to the injury of such creditors. Johnson v. Riley, 41 W. Va. 140, 23 S. E. 698. In the absence of proof that the debtor is possessed of property sufficient to pay his debts after deducting the donation, the law declares it void, and, as the Supreme Court said, it is prima facie void. Bump on Fraudulent Conveyances (3d Ed.) p. 276, says:

"The burden of proof rests upon the donee to establish the circumstances which will repel the presumption of a fraudulent intent. The conveyance stands condemned as fraudulent, unless the facts which may give it validity are proved by him. If no evidence is given to show that the donor had ample means to meet his liability, then the transfer must be deemed void as against creditors."

This is substantially the holding of our Supreme Court, under our statutes. The above author continues after the above quotation, on pages 277, 278, in a discussion of the rights of a man over his property, and concludes that paragraph:

"A man who makes such a conveyance necessarily impairs his credit, and if openly done warns those with whom he deals not to trust him too far. If the debts are fully secured, or are fully provided for in the conveyance, the gift is in the same condition as if the donor were entirely free from debt."

We are unable to see why this is not a just rule. A consideration of the earlier decisions, we believe, will aid in arriving at a correct solution of the question here at issue. Courts and writers have taken different views as to whether a voluntary conveyance as to prior creditors should be declared prima facie void or absolutely void. Chancellor Kent, in the noted case of Reade v. Livingston, 3 Johns. Ch. (N. Y.) 481, 8 Am. Dec. 520, held that a voluntary marriage settlement after marriage was void as to existing creditors. Other courts appear to hold it is only prima facie. In Lerow v. Wilmarth, 9 Allen (Mass.) 386, the court said, speaking through Chief Justice Bigelow:

"We do not, * * * wish to be understood as giving our sanction to the doctrine that a voluntary conveyance by a father for the benefit of his child is per se fraudulent as to existing creditors, although shown not to have been fraudulent in fact, and is liable to be set aside because the law conclusively presumes it to have been fraudulent, and shuts out all evidence to repel such presumption. The better doctrine seems to us to be that there is, as applicable to voluntary conveyances made on a meritorious consideration, as of blood and affection, no absolute presumption of fraud which entirely disregards the intent and purpose of the conveyance, if the grantor happened to be indebted at the time it was made, but that such a conveyance under such circumstances affords only prima facie or presumptive evidence of fraud, which may be rebutted and controlled."

At an early date the Virginia courts followed the rule as laid down by Kent, but later adopted the rule permitting evidence to rebut the prima facie case. Afterwards the Legislature of that state, by statute, followed Chancellor Kent, so says Prof. Minor, in his Institutes. He gives the section of the statute, and as set out by him the clause added by the codifiers of our statute in 1879 is not in the Virginia statute. For the Virginia statute see Bump on Fraud. Conv. (3d Ed.) 652.

Prof. Minor, in volume 2, 4th Ed., of his Institutes, p. 682:

"But the several sections of the statute above cited (V. C. 1873, c. 114, § 2; V. C. 1887, c. 109,

§ 2459) have determined the law with us in favor of Chancellor Kent's decision of Reade v. Livingston, 3 Johns. Ch. (N. Y.) 500 [8 Am. Dec. 520], viz.: That voluntary conveyances are to be reckoned always fraudulent as to existing creditors, but that as to subsequent creditors their validity will depend upon the circumstances already twice stated. As to subsequent creditors, then, the doctrine is this: If the donor in a voluntary conveyance be indebted at the time of giving away his property, the gift is absolutely fraudulent and void as to existing creditors, and is prima facie presumed to be fraudulent as to subsequent creditors; but that presumption may be rebutted by showing that the existing debts were charged upon the property given, and only the surplus bestowed on the donee, or by showing that the donor retained in his hands a remnant of estate amply sufficient to meet the existing demands against him without any definite improbability that it will be so applied."

See Greer v. O'Brien, 36 W. Va. 277, 15 S. E. 74, where the West Virginia statute appears to be the same as the Virginia statute.

[6] It will be noted our statute, though following the form of the Virginia statute, has by its wording changed the rule of Chancellor Kent to the more liberal rule with reference to admitting evidence to rebut a fraudulent prima facie purpose. As to existing creditors, instead of being absolutely void in this state, it is only prima facie so, as declared by our Supreme Court. We therefore, with reference to the existing creditors, stand in the same relation as Virginia does to subsequent creditors. With reference to subsequent creditors, in Virginia, the conveyance, where there were existing creditors when it was made, is prima facie fraudulent, which may be rebutted "by showing that the existing debts were charged upon the property given." As to existing creditors in this state, why may not a prima facie fraudulent conveyance be repelled by showing that the existing debt was a "charge upon the property given"? Where it was sought to show a voluntary conveyance as to subsequent creditors, fraudulent from the fact that at the time it was made there were existing creditors, it was held in a number of cases, where it was shown that the existing debt was secured or provided for in the instrument, that this would repel the presumption of fraud. Johnston v. Zane, 11 Grat. (Va.) 552; Hester v. Wilkinson, 6 Humph. (Tenn.) 215, 44 Am. Dec. 303; Williams v. Davis, 69 Pa. 21.

[7] The Oklahoma Supreme Court, in discussing a question somewhat similar to this, held, as we understand, that a conveyance made subject to a mortgage could not be fraudulent as to the mortgagee, for the reason that it did not affect the lien and that the mortgagee was not injured thereby. Only creditors who are prejudiced could attack it. As very pertinently and aptly suggested by the court in that case, it may be asked in this case: If Mrs. Davis had offered to pay the notes secured by the vendor's lien, could Olcott have said to her the conveyance was executed in fraud of creditors, and that by reason thereof you cannot pay the debt, and I

have therefore become the owner of the fee-simple title? To ask the question, it appears to us, is to answer it. Olcott could not have refused the money because the conveyance was voluntary. If she had paid it, or it had been paid, there can be no question but she would have been vested with the fee-simple title. Harding v. Gillett, 25 Okl. 199, 107 Pac. 665–672, and authorities there cited; Bigelow on Fraudulent Conveyances, p. 497, § 8, and authorities cited in note 5; Wait on Fraudulent Conveyances (2d Ed.) § 125; Jones v. Clifton, 101 U. S. 225, 25 L. Ed. 908.

We have considered this case principally as if the debt of Olcott were secured by simple lien. We think it was more than that. The property was not conveyed simply as subject to the lien. The deed retained an express vendor's lien. Mrs. Davis, it is true, did not assume its payment, and, had she done so, it would have added no force to the contract. It is expressly provided, when the note should be paid, the deed "shall become absolute." The deed was not absolute until the debt was paid by the terms of the deed. The title to the property was retained in L. O. Davis, or in the community, to pay the debt. It was not conveyed out of him. It was only an equity, until after the debt should be paid, that Mrs. Davis received. We are not so sure but by the wording of the deed the very exception of the statute has been met; that is, that Davis was then possessed of property sufficient, or all of which he had been possessed, to pay his debts. This was his only debt, so far as the record shows. He retained all the property he ever had in the land to pay the debt. If it was ever sufficient, it was still sufficient after the execution of the deed by its very terms.

[8] It is shown by the judgment of Olcott against Davis and others that appellant, who was then the wife of Davis, was not made a party to the suit and to the judgment. As we construe the deeds, judgments, and trust deeds, the legal title to the land was in Olcott, and the receiver and railway company, in what they did, were in a sense the agents of Olcott, who was in fact the vendor of Davis and Leonard, in the sale of the land. The recitals in the deed to Davis and Leonard from the receiver, and the notes executed by them, and the execution of the deed of trust by Davis and Leonard to Baker, the trustee, to secure the deferred purchase-money notes and the approval of Olcott of the sale to them, had the effect to render the contract executory and left the legal title in Olcott until the purchase money was paid. The debt due by Davis for the balance of the purchase money was a community debt, and the property conveyed the community property of L. O. and L. A. Davis. This it remained to be until Davis gave by deed to his then wife, appellant, the equity in the land. This equity, it is expressly stipulated, in the deed, did not become absolute until the community debt was paid. The community was liable

for this debt. It is urged by the appellees in this case that the husband, having been made a party and foreclosure having been had against the community, passed the title, legal and equitable, whether the wife was a party or not. The interest of either party, husband or wife, may be conveyed or donated to the other, subject to certain limitations. Section 116, Speer's Law of Marital Rights. The execution and delivery of a deed by the husband to the wife is sufficient evidence of the transfer of the community property to the wife's separate estate. Section 117, Id. The same author (section 352, Id.):

"The husband may convey to the wife property upon which there are incumbrances, as for the purchase money, which charges are contemplated to be paid out of the community funds, or from his own as to that, and such conveyances will be upheld as a valid gift"—citing Swearingen v. Reed, 2 Tex. Civ. App. 364, 21 S. W. 383.

[9-11] As we understand the authorities, the express reservation of the vendor's lien in Olcott, as to Mrs. Davis, the assignee of her husband, would render it unnecessary to make her a party to the foreclosure proceedings. Ufford v. Wells, 52 Tex. 612; Foster v. Powers, 64 Tex. 247; Cattle Co. v. Boon, 73 Tex. 548, 11 S. W. 544; Bradford v. Knowles, 86 Tex. 505, 25 S. W. 1117. However, the above authorities hold, as we read them that while a foreclosure of the lien in such case could be had without making the wife a party, she would not be thereby estopped from tendering the purchase money or from filing a bill in equity to redeem. Pierce v. Moreman, 84 Tex. 596, 20 S. W. 821; McDonald v. Miller, 90 Tex. 309, 39 S. W. 89. Appellees contend this judgment bound the wife, she not being a necessary party to the foreclosure, and a purchaser at the foreclosure sale would have the right to recover the land. This, as we understand, is the effect of Boyd v. Ghent, 93 Tex. 543, 57 S. W. 25; Grandjean v. Runke, 39 S. W. 945; Carter v. Conner, 60 Tex. 52. But in neither of the cases cited was the right presented to redeem as to the subsequent vendee, heir, or donee. Neither do we think the case of Williamson v. Conner, 92 Tex. 581, 50 S. W. 697, or Wilson v. Johnson, 94 Tex. 276, 60 S. W. 242, cited by appellants, applicable to this case. It will be seen that in the first case the notes taken, for which the lien was reserved in the deed, was in the sale to the wife of the land, the deed reciting it was her separate property. She therefore, in the foreclosure proceedings, was a necessary party. In the latter case a suit was brought against the husband, to which the wife was not a party. It was admitted the land was the separate property of the wife, occupied by her and her husband as their homestead, who were in actual possession when the suit was instituted against the husband. It was held a judgment in that case did not have the effect to divest the wife of title. But when the note is a community debt, and the land, upon which

186 S.W.—16

a vendor's lien is retained to secure it, the community property when the debt accrued, in a foreclosure she is not a necessary party; but this would not preclude the wife, to whom the equity in the land subsequent to the original purchase was conveyed, to redeem after the foreclosure. We therefore hold that the judgment foreclosing the vendor's lien, and the sale and purchase thereunder, does not in this case preclude the appellee, Mrs. Collett, from redeeming the land, if the equities of the case otherwise give her the right to do so.

[12, 13] The question next is: Do the facts warrant the finding by the trial court that Olcott rescinded the sale and was there sufficient notice thereof? And, after such notice, whether the tender of the purchase money upon the institution of this suit, or at the trial, was in a reasonable time under the facts of this case. The issues above suggested were not submitted to the jury for their finding, and there is no finding by them upon these issues. If the facts will warrant the conclusion Olcott rescinded, and the offer to redeem the land was not in a reasonable time, we must presume the court so found in support of the judgment. The Supreme Court, in discussing our present statute with reference to submitting a case upon special issue, say:

"But the last provision requires the appellate court to treat an issue not submitted or requested as so found by the trial court as to sustain the judgment, if there be evidence to support such a finding. The consequence must necessarily be that when the trial court has expressly submitted some issues, and excluded others, and neither party has put in writing a request for the submission of those excluded, they must be regarded in the appellate court as having acquiesced in such action and consented for the trial judge to determine from the evidence the issue not submitted." Moore v. Pierson, 100 Tex. 113, 117, 94 S. W. 1132–1134.

In this case the jury found Mrs. Collett had not abandoned her right to the land, or her right to redeem, and that was not her intention. As heretofore stated, our conclusion is the foreclosure in the federal court, on the deeds of trust executed by the Houston & Texas Central Railroad Company, order of sale thereunder, the sale under the order to Olcott, and its approval by that court, and the deed in accordance therewith, placed the legal title to the land in Olcott. The trust indenture thereafter executed by Olcott and others authorized the railroad company to sell the land for certain specific purposes. The deed by the receiver to Davis and Leonard, and Olcott's approval indorsed thereon, all show the legal title was in Olcott. The notes, therefore, were his, and suit on the balance due thereon, and the foreclosure against Davis and Leonard, was a suit by the vendor against the makers of the note. The sale and purchase of the land under the foreclosure proceedings against Davis and Leonard, by Olcott, vested in Olcott the title to the land, subject to the right.

of Mrs. Collett, formerly Mrs. Davis, to redeem. It may be conceded that as to Davis and Leonard, when the suit was instituted for foreclosure, it was an affirmance of the contract, but it nevertheless passed the title to the land in so far as Davis and Leonard were concerned, and as to Mrs. Davis, except as to her right to redeem, and until she did so she could not recover the land, or defeat a recovery by Olcott. As to Mrs. Davis, Olcott could rescind if he elected to do so. We do not understand that the suit by him to foreclose as to Mrs. Davis would preclude a rescission as to her right to redeem. In the case of Gardener v. Griffith, 93 Tex. 355, 55 S. W. 314, Chief Justice Gaines, in his usual clear and terse expression, said:

"In McPherson v. Johnson, supra, 69 Tex. 484, 6 S. W. 798, the court say: 'But we take this to be the rule: If, after such default as justifies the vendor in rescinding the sale, he proceeds for the price, he loses his right of rescission; provided the vendee avail himself of his privilege to pay the debt * * * and still claim the land under a contract with which he has refused to comply.' But it is held that, when the vendee has sold to another, an attempted foreclosure of the vendor's lien in a suit to which the subsequent purchaser has not been made a party does not have the effect to affirm the sale as a finality, or to invest such subsequent purchaser with a perfect title, either legal or equitable, to the premises. Ufford v. Wells, 52 Tex. 612; Foster v. Powers, 64 Tex. 247; Cattle Co. v. Boon, 73 Tex. 549, 11 S. W. 544. So, in the case last referred to by the Court of Civil Appeals (Thompson v. Robinson, 93 Tex. 165, 54 S. W. 243, 77 Am. St. Rep. 843), it was determined that the possession of a subsequent vendee of land sold under an executory contract was not bettered by a foreclosure and sale for the purchase money, he not having been a party to the suit in which the foreclosure was decreed. *Since the decree did not estop the subsequent vendee, it did not the vendor as to him, and the sole effect of the foreclosure and sale was to place the purchaser at that sale in the shoes of the vendor.*" (Italics ours.)

See Douglass v. Blount, 95 Tex. 369, 67 S. W. 484, 58 L. R. A. 699; Fullerton v. Scurry County, 143 S. W. 976; Miller v. Horn, 149 S. W. 769; Evans v. Bentley, 9 Tex. Civ. App. 112, 29 S. W. 497, 36 S. W. 1070.

[14-16] The above authorities, we think, establish the right of Olcott to rescind as to the appellant after he purchased at the foreclosure sale the land under the judgment against Davis. The facts show, before he brought suit on the note, Davis and Leonard announced their inability to complete the payment, and both had left the premises. The improvements were blown down, removed, or destroyed. The fences were permitted to remain down, and the land was open to the commons. The value of the land, owing to the condition of the country, was at that time only $2.25 or $2.50 per acre. While in this condition Olcott bought it at the sheriff's sale. The land at that time had no occupant, and in August, 1900, Olcott went into possession by tenant under a written lease. The tenant occupied and used the land until November, 1903, when Olcott sold the surface of the land to the tenant, re-

serving in himself the mineral rights thereunder. Since that date it has been occupied by his assigns. In January, 1914, his assigns, Olcott and Wallace, sold the mineral rights to the Corsicana Petroleum Company. The facts were sufficient, we believe, to authorize the trial court to find a rescission by Olcott in 1900. It is contended he should have given appellant, Mrs. Collett, actual notice of his purpose to rescind. The evidence in this case shows sufficiently that Olcott demanded payment of the notes from the makers, and after refusal to pay instituted the suit of foreclosure. The appellant, her husband, or Leonard, were not on the land, or exercising any control over it at the time Olcott purchased, or since that time. Actual possession under a claim of ownership, exercising the right of an owner on the land, is ordinarily notice to the world of the rights asserted by the occupant. The appellant had left the county where the land was situated and resided in a distant part of the state, and part of the time (about three years) lived in another state. She did not pay the taxes, or offer to do so. If appellant had been in possession, exercising control of the land, maintaining and keeping up the improvements, there would have been some ground for asserting it to be inequitable for Olcott to seek to oust her without notice of his purpose to rescind the contract. Under the circumstances of this case, we find little equity in Mrs. Collett at the time Olcott re-entered and reinvested himself of the title as against all persons. We do not think that it became his duty to search the country in order to find appellant and give her notice of his purpose. If she had been on the land, exercising any control over it, then perhaps, before re-entry, he should have given her notice. There was nothing on the land of any value, that appellant or her husband had placed there, for which she could have demanded payment or for reimbursement. The facts and circumstances in this case indicate she knew of the foreclosure proceedings and that there was trouble over the payment of the purchase money due by her husband and Leonard. She at no time, until the filing of this suit, offered to pay the money due, and while she says, and the jury find, it was not her intention to abandon the property, she kept this purpose secret as to Olcott and his agents and assigns. It occurs to us that her delay in offering to pay the money has been unreasonable. Since she received the deed she has not offered to do so, or intimated to the owner of the land that she would do so, but for more than 20 years she remained silent on that purpose. Not until oil was discovered, and after the petroleum company, at expense, developed the land as an oil-producing property, did she manifest any purpose to redeem. We believe the trial court was justified in finding that appellant did not offer to redeem in a reasonable time.

[17-21] It is apparently urged by appel-

lants that because a subvendee has the right to institute suit and maintain an action in trespass to try title for the land, being vested with an interest in the land, where it is determined that such party did not intend to abandon her right, she may, at any time when she elects to do so, offer to redeem the land as to the original vendor, or those standing in his place. The fact that she may have such a right does not affect the rules of law or equity which govern that right. In her action in this case, she having specifically pleaded her title and rights, the burden was on her to allege and prove all the necessary facts to establish those rights, among which is that a rescission had not been declared by the vendor, or, if so, that she had no notice, or that the time in which she offered to redeem was not unreasonable, or to show an excuse for the delay. Ordinarily, when time is not made the essence of the contract, notice must be given of an intention to rescind, as where the vendee is in possession, has paid part of the consideration on the land, and the like. Under such circumstances, it would be inequitable to rescind without notice of such intent, giving an opportunity to comply with the contract. Hild v. Linne, 45 Tex. 476; Scarborough v. Arrant, 25 Tex. 129; Kennedy v. Embry, 72 Tex. 387, 10 S. W. 88; Tom v. Wollhoefer, 61 Tex. 277.

In this case there was no possession by appellant, and no improvements on the land when Olcott went into possession by tenant, or when he purchased it at the sheriff's sale. The debt was owing by the community estate of Davis and wife. The letters in the record show a demand had been made for the payment by Olcott, and that Davis said that he could not pay it, and that he would have to permit the land to go back. Suit was brought, and foreclosure and sale had in an action to which the wife was not a necessary party. The evidence will warrant the inference that Mrs. Davis knew of the demands for payment and of the foreclosure proceedings. From January 31, 1893, to the filing of this suit, January 24, 1914, 21 years after the making of her deed, she did not offer to pay the money, paid no taxes on the land, nor in any way had charge of the land. In 1899 Olcott purchased, under the sale by the sheriff, and took his deed thereto, recorded it, and thereafter paid the taxes due thereon. He went into possession of it in 1900, sold the surface of the land in 1903, and his vendee, who was his tenant, remained in possession, using and occupying it, up to the filing of the suit. The mineral rights were sold, and the vendee thereof put down wells, obtaining oil, when for the first time the equity here set out was asserted. While bringing suit against Davis waived the rescission on the antecedent failure of Davis to pay the notes, this did not relieve Mrs. Davis from her obligation thereafter to per-

form in a reasonable time. More than 15 years after Olcott purchased at execution sale elapsed before there was an offer on her part, and nearly 14 years after he placed a tenant on the land, who fenced and used it, and under whose possession it has remained ever since.

We think the rule announced in Thompson v. Robinson, 93 Tex. 165, 54 S. W. 243, 77 Am. St. Rep. 843, s. c., 52 S. W. 117, is applicable to this case. See Evans v. Bentley, 9 Tex. Civ. App. 112, 29 S. W. 497, 36 S. W. 1070, and authorities cited. We believe the delay in instituting this suit for specific performance was unreasonable, and when the advance in the value of the land is considered it is strongly suggestive of a speculative purpose of delay until such time. The facts are sufficient to warrant the finding on the part of the trial court that Olcott rescinded as to Mrs. Davis; that she had notice of his purpose, or knowledge of such facts as would put her upon notice, and in offering to redeem or perform she has delayed an unreasonable length of time. The appellant, by the record in this case, shows gross laches and inexcusable negligence. Under the facts of this case it would be, as we believe, inequitable and unjust to permit her at this late day to enforce performance of the contract.

The question of the three-year statute of limitation is presented in this case. The appellees contend that under the findings of the jury they were entitled to an instructed verdict on that ground. Appellants contend that the conveyance from Davis to his wife caused a break in the title, and created a hiatus such that the purchase of Olcott at the sheriff's sale did not give him a regular chain of title from and under the sovereignty of the soil or color of title. We have investigated this question with some care, and are unable to arrive at a definite conclusion in the matter, and, as we have reached the conclusion that the case should be affirmed upon the grounds heretofore stated, we have concluded not to discuss or attempt to decide this question at this time.

[22] The plea of the five and ten year statute is also relied upon. We, for the same reasons, decline at this time to pass upon them, or decide the questions involved in their consideration; neither do we regard it as being necessary to this decision to determine whether or not the rules with reference to whether limitation, as applied to stale demand, should be applied to Mrs. Collett's equity of redemption, and decline to express an opinion upon that point.

Before concluding, however, we desire to say that we are unable to find evidence sufficient to charge the Corsicana Petroleum Company with notice of the fraud charged to have been practiced by Fleischauer, the agent of the Houston & Texas Central Railroad Company, in obtaining the deed from Mrs.

Collett, on February 17, 1913. While the petroleum company made a motion, requesting the rendition of the judgment on the findings of the jury, they, in the same motion, expressly stated that such motion was requested, without the purpose of waiving their right, or without waiving the error of the trial court in refusing to instruct the jury to return a verdict in favor of the Corsicana Petroleum Company. We believe that under the facts in the case the court should have instructed a verdict for the petroleum company. Without discussing the evidence on this point, we can see nothing in the record that will bring notice to that company that Fleischauer, in obtaining the deed, misrepresented the facts to Mrs. Collett and induced her thereby to execute the deed. The deed was duly recorded and in the chain of title when the petroleum company concluded the contract and accepted the conveyance to them. We believe this estopped Mrs. Collett from recovering the interest set up by her from the petroleum company.

We affirm this case on the finding that Olcott rescinded the contract as to Mrs. Collett in 1890, when he took possession of the land, and that the facts are sufficient in this record to charge Mrs. Collett with the fact that the money due on the land had been demanded and refused, and that suit was instituted to foreclose the lien, and the land purchased thereunder by Olcott, and that her delay in offering to redeem the land had been unreasonable under the facts and circumstances in this case, and it would be inequitable at this time to enforce a performance of the contract.

The case is affirmed.

---

⊘⟿For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes